## *In Re.* Francis B. Edymoin.

A *pardon* may be alleged in opposition to a *conviction ;* and may also be alleged as an answer to a return on *habeas corpus.*

Where a pardon was made out, executed and delivered to the Warden of the State Prison, for the discharge of Francis B. Edymoire, and it appeared on return by the Warden, to a writ of *habeas corpus,* that the name of the prisoner, in fact, was Francis B. *Edymoin, held,* that the variance was unimportant, and did not vitiate the pardon.

The Constitution, (*Art.* 4, § 5,) vests the Governor with the power and general 'urisdiction to grant pardons, except in specified cases; and the Legislature direct as to the manner of making the application in one particular—that is, that *notice* of the application for a pardon must be served upon the District Attorney of the county in which the conviction shall have been had, &c. *Held,* that the non-compliance with this provision did not deprive the Governor of his jurisdiction to pardon. The Governor's jurisdiction does not depend upon an application for a pardon being made to him in a particular way.

Where the Governor has jurisdiction to pardon, and has exercised it, the court, on *habeas corpus,* can not go behind the pardon to enquire into the regularity of the proceedings.

Nor can the question be raised, on *habeas corpus,* whether the pardon was obtained by false and fraudulent pretences. Where it appears, upon *habeas corpus,* that the pardon is fair on its face, and an unconditional one, that puts an end to any enquiry into the manner of obtaining it.

*Cayuga County—At Chambers—On habeas corpus.* In October, 1852, Francis B. Edymoin was convicted of burglary in the second degree, at Owego, in the county of Tioga, and was sentenced to confinement in the Auburn State Prison for five years.

On the 9th of July, 1853, an unconditional pardon was granted to Edymoin, by His Excellency Horatio Seymour, Governor of the State. The pardon was duly recorded in the office of the Secretary of State, and Edymoin was discharged, by virtue of the pardon, September 2d, 1853. The facts in the case appear in the opinion of the judge.

Christopher Morgan, Clarence A. Seward, James R. Cox, and B. F. Hall, *for Petitioner.*

The Attorney General, L. S. Chatfield, Warren T. Worden and Michael S. Myers, *for the Warden of the Prison.*

*In Re.* Francis B. Edymoin.

HUMPHREYS, County Judge.—A writ of *habeas corpus* was allowed in this case, returnable the 20th of August, 1853. The writ was in the usual form, and was directed to William Titus, warden of the State Prison, at Auburn, and was issued for the purpose of enquiring into the cause of the imprisonment and restraint, in said prison, of Francis B. Edymoin, otherwise called Francis B. Edymoire. The petition for the writ, which was verified, contained the following statement:

Francis B. Edymoin, the prisoner, was convicted of burglary in the second degree, at a court held in Tioga county, in October, 1852, and sentenced to the Auburn State Prison, at hard labor, for five years. On the 9th day of July, 1853, His Excellency HORATIO SEYMOUR, Governor of the State, granted to the prisoner, under his hand and the great seal of the State, an unconditional pardon of the said offence, in the usual form of pardons. The pardon was recorded in the Secretary of State's office, and forwarded to the warden of the said prison, and, on the 11th day of July, the prisoner, by virtue of the pardon, was discharged from his imprisonment. After he was discharged, and on the 6th day of August, he was arrested at the city of Albany, by direction of the Governor and the Agent of the prison, and, on the 8th of August, was recommitted to the said prison against his will, and was, at the time of the application, confined therein at hard labor. The pardon was taken from his possession or from the person with whom it was left, without his consent, and was then in the custody of the Governor or of the said agent of the prison. The prisoner was not committed nor detained by virtue of any process issued by any court of the United States, or any judge thereof, or by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree. The original rescript for the pardon, made out by direction of the Governor, was for Francis B. Edymoin, and the pardon was so recorded in the office of the Secretary of State. After an application had been made at the office of the Secretary of State, by mail, for an exemplified copy of the pardon, the name in the record was

altered to Francis B. Edymoire, to correspond with the original pardon as it then appeared, August 11th, by the advice of the Attorney General. An exemplified copy of the record as thus amended, was furnished, and was annexed to the petition. A letter from the Secretary of State, stating facts in relation to the alteration of the record, was also annexed and made part of the petition.

On the day appointed, the warden of the prison made a return to the writ, that he held the prisoner, as warden of the Auburn Prison, as a convict under judgment and sentence of a Court of Oyer and Terminer, of the County of Tioga, held in October, in the year 1852, upon an indictment for burglary, and that he was sentenced to be imprisoned for five years, at hard labor, in the State Prison at Auburn. He further returned that he had not any person by the name of Francis B. Edymoire in his custody.

The prisoner alleged his pardon as set forth in the petition, in answer to the return, under an objection.

Proof was made substantially, of the facts set forth in the petition; those in relation to the rescript for the pardon and the alteration of the record, under objection; and the original pardon was produced by the Governor.

On the part of the warden, proof was made that the District Attorney of Tioga county had had no notice of the intended application for the pardon, and that the signatures of the officers of the prison, to the application for the pardon, were forged; and that a letter accompanying the application, purporting to be from the physician of the prison, was also forged—and that the pardon was granted upon these papers. All of which was under objection. The objections were to be disposed of on a view of the whole case.

It was urged upon the argument in this case, that the prisoner had no right to allege his pardon, in answer to the return of the warden of the prison, showing imprisonment under a conviction; and that by the 42d section, and subdivision 2, of the statute, (2 *R. S.* 469,) it is the duty of the officer to remand the party on this appearing by the return. The 43d section

*In Re.* Francis B. Edymoin.

of the act in reference to detention on civil process, commences " If it appear on the return," &c. The language of the 42d section, upon which the objection is made, is, " If it shall appear that he is detained," &c., then he is to be remanded. By which I understand—if it shall appear, not solely upon the return, but upon the proceedings and papers before the officer. The 50th section of the act is as follows: " The party brought before any such court or officer, on the return of any writ of *habeas corpus*, may deny any of the material facts set forth in the return, or allege any fact, to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge; which allegations or denials shall be on oath; and thereupon, such court or officer shall proceed in a summary way, to hear such allegations and proofs as may be produced in support of such imprisonment or detention, or against the same, and to dispose of such party as the justice of the case may require." The language of this section allows, not only a contradiction of the return, but an avoidance of it, by alleging that in some legal way the party is entitled to his discharge. Although I do not find any adjudication in the particular case of a pardon set up in opposition to a conviction, yet this 50th section has, in two instances, received such a judicial interpretation by the former Supreme Court, as in my judment, to dispose of this objection.

The case of the People agt. McLeod, was a writ of *habeas corpus*, returnable before the Supreme Court. The prisoner, who was indicted for murder, sued out the writ, and on the hearing offered proof showing an alibi—or that he was not present when the murder took place, claiming his discharge on that ground. The court decided that he must take his trial on the indictment, and that they could not interfere. And Judge COWEN, in the opinion, referring to this 50th section, says, " It must, I apprehend, for the most part, apply to cases where the original commitment was lawful, but in consequence of the happening of some subsequent event, the party has become entitled to his discharge; as if he be committed till he pay a fine, which he has paid accordingly, and the return states the

commitment only. So, after conviction, he may allege a pardon, or that the judgment under which he was imprisoned, has been reversed." (1 *Hill's R.* 377 *at* 404.)

In The People agt. Cassels, (5 *Hill's R.* 164 *at* 167) Judge Bronson, in reference to this 50th section of the statute, uses this language : " the officers may also enquire whether any cause has arisen since the commitment for putting an end to the imprisonment, as a pardon, reversal of the judgment, payment of the fine, and the like." These authorities are to the effect, that a pardon can be alleged in opposition to a conviction, and that it is one of the answers to the return contemplated by this statute.

The first question which arises, is, was the pardon granted by the Governor, a pardon for this prisoner? It was urged that the pardon was not for the prisoner, because the name in it was Francis B. Edymoire. The pardon describes Francis B. Edymoire as convicted of burglary in the second degree, at a court held in and for the county of Tioga, in the month of October, 1852, and sentenced to be imprisoned in the State Prison for five years. The return of the warden to the writ describes the prisoner as Francis B. Edymoin, and as convicted of burglary, at a Court of Oyer and Terminer, held in an and for the county of Tioga, in the month of October, (15th,) 1852, and sentenced to be imprisoned in the State Prison at Auburn, for five years. The name differs, in that one terminates with " .n," and the other with " re ;" in all other descriptions they are alike except that the pardon sets forth the degree of the crime, and in the return appears the name of the court at which he was convicted.

The pardon, when executed, was sent by mail to the warden, and he and the other officers of the prison discharged the prisoner upon it, and suffered him to go at large. The return of the warden also states that there is no person in the prison by the name of Edymoire. No question appears to have been raised at that time, about the pardon being for the prisoner; and I am of the opinion that the variance in the final letters of

*In Re.* Francis B. Edymoin.

the name is unimportant, and does not vitiate the instrument, and upon all rules of legal interpretation, that it is a pardon for the prisoner.

Two objections were made to the validity of the pardon :

1st. That the District Attorney of Tioga county was not served with a notice of the intended application for the pardon, and, 2d. That the pardon was obtained from the Governor by false and fraudulent pretences.

The great object of the writ of *habeas corpus* is to free from illegal restraint and imprisonment. It cannot be made to supply the place of proceedings by *quo warranto*, (4 *Barbour S. C. R.* 170,) nor can it be turned into a writ of error, (1 *Hill R.* 159,) nor is it intended to review the regularity of proceedings in any case. (*Matter of Prime*, 1 *Barbour S. C. R.* 349.) We cannot enquire into the validity of writs, warrants, or other process upon its return, further than to ascertain whether they will protect the party suing them out, or the officer serving or executing them. (3 *Hill*, 658, *reporter's note* 30.) From these cases, and looking to the main purpose of the writ, and the course of adjudications in relation to its application, I conclude that, in proceedings under it, we are confined to jurisdictional questions, and to what may be called the *prima facie* appearance of the proceedings, without raising any collateral issues, and without any impeachment of records, deeds or papers fair on their face, and with the sole object of enquiring whether the party is legally detained.

In reference to the first objection, the Law of 1849, chapter 310, provides that "before any application for a pardon shall be presented to the Governor, written notice thereof shall be served upon the district attorney of the county in which the conviction shall have been had, and proof of due service of such notice shall be presented to the Governor before any such application shall be acted on."

By the Constitution, article 4th, section 5th, "the Governor shall have the power to grant reprieves, commutations and pardons after conviction," &c., " subject to such regulation as may be provided by law, relative to the manner of applying

for pardons." The Constitution vests him with the power and general jurisdiction to grant pardons, except in specified cases, and the Legislature direct as to the manner of making the application in this one particular—the notice to the district attorney. The Legislature could not have intended to have made the Governor's jurisdiction to pardon to depend on an application made to him in a particular way. They may compel a compliance with the law, but I cannot see how they can divest him of his jurisdiction. Can we say that the Governor has no power to pardon of his own motion, and on facts known to himself, without any application being made to him? I hold that the Governor had jurisdiction, and having exercised it, we cannot go behind the pardon to enquire into the regularity of the proceedings on his part that preceded it.

From the view before taken it will be seen, that we cannot, on *habeas corpus,* raise the question whether the pardon was obtained by false and fraudulent pretences. It is fair on its face, and an unconditional pardon from the offence under which the prisoner was imprisoned, and upon it he has been once discharged. It is a deed, and of such solemnity that it cannot be questioned in this proceeding.

This pardon was undoubtedly obtained by gross fraud, yet in this proceeding I must hold it valid; nor can I see how the prisoner can be prevented from being discharged on *habeas corpus,* and I shall, therefore, not without reluctance, direct him to be released from imprisonment.