# IN RE MOORE.

HABEAS CORPUS—PARDON—VALIDITY—GOVERNOR—AUTHORITY OF —RIVAL CLAIMANTS TO OFFICE OF—ELECTION TO FILL VACANCY—CANVASSING BOARD—STATUTES—CONSTRUCTION.

1. The statutory provisions (sections 3367-3370 Rev. Stat., 1887) regulating applications for pardon, and requiring the giving and publication of notice thereof, are directory only to applicants for pardon, and those moving in their behalf, prescribing a method by which they can procure a hearing before the governor; but they do not limit or impose any restrictions upon the authority of the governor to grant pardons.

2. Their effect is not enlarged by the constitution (Art. IV. Sec. 5), giving the governor power to grant pardons and authorizing the legislature to "regulate the manner in which the remission of fines, pardons, computations, and reprieves may be applied for," as that clause of the constitution does not regulate the action, or limit the authority or jurisdiction of the governor.

3. On habeas corpus the court cannot inquire whether the pardoning power has been exercised judiciously, or whether the proceedings preliminary to the granting of the pardon were irregular, if any such were necessary.

4. Whenever necessary to do so in the discharge of its own duties each department of the government must decide for itself any question which may arise as to the personnel of

the other departments, and for the purposes of the case at bar, it being necessary to determine whether the one granting the pardon was entitled to perform the duties and exercise the powers of the office of governor, it is proper for the court to express its opinion upon that question.

5. In the absence of a constitutional provision for filling a vacancy in the office of governor for the unexpired term by election it is within the power of the legislature to make such a provision by law.

6. The election held on the 8th day of November, 1892, at which an election was held to fill a vacancy in the office of governor for an unexpired term, was a general election.

7. The fact that the election as to the office of governor was to fill a vacancy did not as to that office constitute the election special.

8. The person elected to fill such vacancy having been elected at a general election should assume the duties of the office as required by the constitution (Art. VI., Sec. 17) on the first Monday in January succeeding his election.

9. The attempt of the one so elected to assume the duties of the office on December 2, 1892, was premature, and his attempted qualification on that day was void.

10. Under the statute of the territory continued in force as one of the laws of the state (Chap. 80, L. 1890, Sec. 141), requiring the secretary, auditor, and treasurer to canvass the votes for delegate in congress and all members of the legislature, such officers constitute a state canvassing board, and although there is no specific provision to that effect, it is the duty of that board to canvass the vote cast for state officers, including the office of governor.

11. The object of courts in construing legislative enactments is to ascertain from the language employed the true intent and meaning of the legislature, and to enforce it when ascertained; and all statutes in pari materia are to be construed together in ascertaining the legislative intent.

12. A legislative enactment upon any subject may be considered, in so far as it aids in arriving at the true meaning and intent of other statutes upon the same subject, as a legislative construction.

13. The attempted assumption of the duties of the office of governor by one elected to fill a vacancy, prior to the can-

vass of the vote and declaration of the result was premature and invalid.

[Petition in habeas corpus filed December 31, 1893.   Decided January 17, 1893.]

PETITION of James Moore for writ of habeas corpus, who claimed to be entitled to a discharge from the penitentiary by reason of a pardon granted him by the Secretary of State as acting Governor.

The return of the warden of the penitentiary denied the validity of the pardon, alleging that the same was issued without any previous notice to the county and prosecuting attorney, and that no notice of such application had been published as required by law; and further that at the time the pardon was granted, the Secretary of State was not the then acting Governor for the reason that at a special election held on November 8, 1892, in pursuance of law and the proclamation of the Secretary of State, at the time acting Governor, one John E. Osborne was duly elected to fill the vacancy in the office of Governor, caused by the resignation of Francis E. Warren; and that prior to the date of the pardon the said John E. Osborne, having ascertained from the canvass of the county canvassing boards, made by the respective canvassing boards in each county, that he had received a majority of all the votes cast for Governor at such election, did take the oath of office as Governor of the State, and did thereupon enter upon the discharge of the duties thereof, and that he was Governor at the time of the pardon.

It was agreed at the hearing, that the said John E. Osborne, who had been elected Governor at the election held as aforesaid, took the oath of office on the 2d day of December, 1892; and, on that date, did present the same for filing in the office of Secretary of State, which officer refused to receive the same; and on that date, as far as he could legally, did enter upon and assume and discharge the duties of the office of Governor; and thereafter, so far as he could legally did discharge the duties of that office.

Francis E. Warren, who had been regularly elected as Gov-

ernor, at the first election held under the constitution for a term ending on the first Monday of January, 1895, having resigned the office in consequence of his election as United States Senator, Amos W. Barber, as Secretary of State, became acting Governor by virtue of Sec. 6, Art. IV, of the constitution, which provides that in such case, the Secretary of State shall act as Governor until the vacancy is filled; and in pursuance of an act of the legislature an election to fill such vacancy for the unexpired term, was called to be held at the time of the regular election for State and county officers, to be held November 8, 1892. At this election John E. Osborne was elected to fill such vacancy. The canvass of the votes cast for that office was not concluded by the State canvassing board until December 31, 1892. Until the first Monday of January, 1893, Amos W. Barber, as Secretary of State, claimed to be acting Governor, and assumed to perform the duties as such; and on December 28, 1892, issued the pardon in question.

It was further contended in support of the right of Governor Osborne to assume the duties of Governor at the time he did that there was no provision made by law for an official canvass of the votes cast for the office of Governor, and no official declaration of the result was necessary. The only statute with reference to a State canvassing board is referred to in the opinion, and the other material facts, constitutional and statutory provisions, affecting the matters in issue, are also fully stated in the opinion.

*Walter R. Stoll* and *F. H. Harvey,* for petitioner.

*Van Orsdel & Esteb,* for respondent.

Const., Art. 4, Secs. 1, 6; Art. 6, Sec. 17; Laws 1891, pp. 237, 392, 237, 393; Laws 1890, pp. 115, 157, 185, 178; Ex parte Norris, 8 S. C., 471; Ex parte Smith, 8 S. C., 511.

*C. N. Potter,* as amicus curiæ, on behalf of the petition, argued and contended: The Governor was elected at a general election and should not enter upon the duties of his office until the first Monday of January following. (Const., Art. VI, Sec. 17.) The policy of the law requires a declaration of the result. (Const., Art. IV, Sec. 3; State ex rel. Morris v.

Bulkley, 61 Conn., 287; Bowler v. Eisenhood, 12 L. R. A., 709, S. Dak.; People ex rel. Conliss v. North, N. Y., 124; People ex rel. Woods v. Crissey, 91 N. Y., 625; Browdie v. Campbell, 71 Cal., 20.) The courts should give a liberal construction to the election statutes to carry out the policy of the law. The election was general. No special election is provided for the office of Governor (6 Colo., 209). If it was not a general election then the succession act will not permit the newly elected Governor to take his office until the result has been declared.

*A. C. Campbell*, as amicus curiæ, in opposition to the petition, argued and contended that inasmuch as neither of the persons claiming to have been Governor were parties to this proceeding the case should be determined without passing upon the question as to who was Governor during the month of December, 1892. The pardon is invalid, not having been procured in the manner provided by law. (Const., Art. IV, Sec. 5; Rev. Stat. of Wyo., Secs. 3367-8.) The constitution lodges the pardoning power in the executive and legislative department, and not absolutely with the executive. Neither the executive or the judiciary can exercise any authority or power except as is clearly granted by the constitution. (Cooley on Const. Lim., 137, and note; Field v. People, 3 Ills., 79.) A Governor is as much bound by the law as any individual (Hartranft, appeal, 27 Am. Rep., 678; Floy's Acceptances, 7 Wall). When the legislature has enacted a law by which a pardon can be issued the law must be complied with or the pardon will be invalid. (9 Ind., 20; 16 Ind., 497.) The newly elected Governor having received a majority of the votes cast had a right to qualify at any time after having been elected.

Conaway, Justice.

This is a petition for the writ of habeas corpus, and for a discharge of the petitioner from imprisonment.

It appears from the pleadings that petitioner is restrained of his liberty in the penitentiary at or near Laramie, by virtue of a mittimus issuing from the district court of the First Ju-

dicial District for Laramie County, upon his conviction therein of the crime of grand larceny, and that his term of imprisonment has not expired. He claims by his petition that such restraint is illegal, because on December 28th, 1892, Amos W. Barber, Secretary of State and acting Governor of the State of Wyoming, granted unto petitioner and executed in due form of law a full and complete pardon for said crime of grand larceny. The return to the writ admits the issuing by said Amos W. Barber of a pretended pardon, but denies that it is a full and complete pardon for said crime of grand larceny. The return to the writ admits the issuing by said Amos W. Barber of a pretended pardon, but denies that it is a full and complete pardon of the crime of which the petitioner had been convicted and for which he is serving sentence, upon two grounds:

1st. The non-observance of certain statutory provisions as to giving and publishing notice of the application for the pardon.

2d. That Amos W. Barber was not acting Governor of Wyoming at the time of granting said pardon.

To the first defense there is a demurrer. The statutory provisions referred to were enacted in 1869, and have been in force since, appearing in Sections 3367 to 3370 inclusive of the Revised Statutes of Wyoming. Under the territorial government, they were never understood as limiting or imposing any restrictions upon the authority of the Governor to grant pardons. It is conceded that if such were their effect, they would have been invalid as repugnant to the Organic Act of the Territory, and the subsequent legislation of Congress affecting the territorial government vesting the pardoning power in the Governor. These provisions were directory to applicants for pardons and those moving in their behalf, prescribing a method by which they could procure a hearing before the Governor. But the Governor might give them a hearing without such preliminary procedure, or might grant a pardon upon his own knowledge and upon his own motion, without any application or any hearing.

But it is contended that these same statutes should have a

different and greater effect under our State constitution than they had under the legislation of Congress when we were in the territorial condition.

We are not prepared to say that the continuance in force by our State constitution of the statutes of the Territory as the statutes of the State, or their re-en-actment in general terms by the State legislature, will give them a force different from or greater than they had in the Territory, and make them in effect different laws from those in force in the Territory when it became a State. If this be a doubtful question, we have to aid us the uniform construction and practice of the executive department up to the present time, giving to these statutes the same effect they had under the territorial regime and no more. We would not overthrow this executive construction and practice without satisfactory reasons. These statutes were continuously acted upon as valid by the executive department of the territorial government, which could be done only by considering them as regulating the method of procedure by petitioners to bring their applications before the Governor in a manner to entitle them to be heard, and not as limiting the authority or discretion of the Governor when he saw fit to exercise it on different grounds. Why should a different construction be adopted now?

The constitutional provision under which it is claimed that these statutory provisions should have an enlarged effect, including the authority of the Governor in their scope, is found in Article IV at Section 5:

"The Governor shall have power to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment; but the legislature may by law regulate the manner in which the remissions of fines, pardons, commutations and reprieves may be applied for." The last clause is the one relied on. But it is quite apparent that it does not regulate the action or limit the authority or jurisdiction of the Governor. He does not apply for the remission of fines, or for pardons, or for commutations, or for reprieves. The applica-

tions are made to him—not by him. The Governor has complete jurisdiction to grant pardons except in cases of treason and impeachment. The inquiry by a court in a habeas corpus proceeding is merely as to the jurisdiction of the Governor. We cannot inquire whether the pardoning power has been exercised judiciously, or whether the proceedings preliminary to the granting of the pardon were irregular, if any such were necessary. In re Endymoin, 8 How. Pr., 478. Decisions in Indiana (State v. Dunning, 9 Indiana, 20; 16 Indiana, 497), apparently to the contrary, are made under a constitutional provision materially different from ours. The demurrer to the first defense is sustained.

2. In regard to the second defense, it is suggested by one of the amici curiæ, that this court should avoid, if possible, expressing an opinion as to who was entitled to act as Governor on December 28th, 1892, when the pardon was issued.

The court would gladly refrain from expressing such opinion if it were possible to decide this case without doing so; but the defense have raised the point and it is unavoidable that it be decided. No authorities are presented to the effect that it should not be decided, and it is safe to say that none can be found. The authorities principally relied upon by the defense in this case are two habeas corpus cases from South Carolina, arising upon pardons, one of which was issued by Wade Hampton after his assumption of the office of Governor of that State following his election to that office in 1876. Ex parte Norris, 8 Richardson (S. C.), 408; Ex parte Smith, Id., 495. In both of these cases the rights of the contending claimants to the office of Governor were discussed at great length and decided without a question as to the propriety of this course. Such cases are numerous. Each department of the government is under the necessity of deciding for itself, when necessary to do so in the discharge of its own duties, any questions which may arise as to the personnel of the other departments. It is necessary for the purposes of this case, in determining the validity of the pardon of petitioner, to determine whether Amos W. Barber was entitled to perform the duties and exercise the powers of the office of

Governor of the State of Wyoming on December 28th, 1892, when he assumed to issue the pardon.

It is claimed by the defense that he was not so entitled at that time, but that John E. Osborne was.

Francis E. Warren was elected the first Governor of the State of Wyoming for a term ending on the first Monday in January, 1895. By provisions in Article XXI of the constitution, entitled "Schedule," his term began prior to the first Monday in January, 1891. In December, 1890, and after the commencement of his term, he resigned. Amos W. Barber, Secretary of State, thereupon became acting Governor. Const., Art. IV, Sec. 6. The constitution does not provide for filling a vacancy in the office of Governor for the unexpired term by election, as it does for filling a vacancy in the office of justice of the supreme court. It is, however, no doubt within the constitutional power of the legislature to make such a provision by law. The first legislature of the State of Wyoming enacted several statutes bearing upon this subject. These statutes, together with such constitutional provisions as affect the same subject, must be construed together, as laws in pari materia, the constitutional provisions controlling in case of any conflict between them and any of the enactments of the legislature.

Governor Osborne was elected on November 8th, 1892, to fill the vacancy in the office of Governor occasioned by the resignation of Francis E. Warren. If his election was "at a general election," then the constitution fixes the time when he should enter upon the duties of his office, at the first Monday in January, 1893. He actually took the oath of office and assumed to enter upon the discharge of the duties thereof on December 2d, 1892. It is claimed by the defense that he has been Governor of the State from that time, and that Amos W. Barber ceased to be acting Governor at that time. The constitution provides, Art. VI, Sec. 17, that: "All general elections for State and county officers, for members of the House of Representatives and the Senate of the State of Wyoming and Representatives to the Congress of the United States, shall be held on the Tuesday next following the first Monday

in November of each even year.    Special elections may be held
as now or as may hereafter be provided by law.    All State and
county officers elected at a general election shall enter upon
their respective duties on the first Monday in January next fol-
lowing the date of their election, or as soon thereafter as may
be possible." The first legislature in the act approved De-
cember. 24, 1890, after providing who should be temporary
acting Governor in case of vacancy in that office, and that he
should issue a proclamation upon assuming the duties and
powers of the office, enacted as follows: "Sec. 3.    Whenever
the powers and duties of the office of the Governor of the State
of Wyoming shall devolve upon a person, as hereinbefore pro-
vided, the person acting as Governor shall continue to act as
Governor, as aforesaid, until the end of the term of the Gov-
ernor; provided, such assumption of office is made as afore-
said less than twenty days before the next general election of
county officers preceding the next ensuing general election of
State officers; but should such assumption be made as afore-
said previous to twenty days before a general election for
county officers, then and in that case, the person acting as
Governor as aforesaid shall issue an additional proclamation,
calling for the election of a Governor to fill the unexpired
term, which election shall take place at the same time as the
general election for county officers, and such election, together
with the returns and canvass thereof, shall be conducted in
all respects as though it was an original election for Governor.
When the State canvassing board shall have canvassed the vote
of the election as aforesaid, and in the manner provided by law,
declared a person of such election to be elected as Governor,
such person shall within thirty days after such canvass, or as
soon thereafter as possible, qualify and assume the duties and
powers of Governor, and shall be the Governor of the State of
Wyoming for the remainder of the unexpired term of Gov-
ernor." Session Laws 1890-1, p. 115.    By act approved Jan-
uary 10, 1891, the same legislature enacted as follows: "Sec-
tion 1.    There shall be held in the several voting precincts
of this State, on the Tuesday next following the first Monday
in November, in the year of our Lord one thousand eight hun-

dred and ninety-two, and on the Tuesday next following the first Monday in November in each second year thereafter, a general election at which the following county officers shall be elected: The county clerk, the sheriff, the county treasurer, the county and prosecuting attorney, the superintendent of schools, the assessor, the coroner, the surveyor, the county commissioners, the road supervisor (when such office shall be declared by law or by an order of the board of county commissioners to be an elective office), the justices of the peace, the constables, and such other county officers as may be necessary that may be created by law and which are made elective." "Sec. 4. At each of said general elections there shall also be elected such State officers as may be required to be elected to fill any vacancy occurring by operation of law or the constitution of this State, including any vacancy or vacancies in the office of justice of the supreme court." "Sec. 6. At the general election held in the year one thousand eight hundred and ninety-four, and at the general election held every fourth year thereafter, there shall be elected a Governor, a Secretary of State, an Auditor, a Treasurer, a Superintendent of Public Instruction, and such other State officers as are or may be created by law and made elective, whose election shall occur at such general election." Session Laws 1890-1, p. 236. By act approved January 21, 1891, the same legislature enacted as follows: "Section 1. First. There shall be held in the several voting precincts of Wyoming on the Tuesday next after the first Monday of November in the year eighteen ninety-two, and on the Tuesday next after the first Monday in November in each second year thereafter, a general election, at which the following officers shall be elected: A Representative or Representatives in Congress, members of the Senate and House of Representatives of the State from each county as provided by law and to which such county may be entitled, and all State and district executive and judicial officers which are made elective by law whenever there is a vacancy in any State or district executive or judicial office, or whenever subsequent to such election and prior to the next general election any State or district executive or judicial offices shall become

vacant by reason of the termination of the terms of office of the incumbents therein."

The election held on the 8th day of November, 1892, at which John E. Osborne was elected Governor of the State of Wyoming was one of the elections called in Sec. 17 of Art. VI of the State constitution, general elections to be held on the Tuesday next following the first Monday in November of each even year. It was one of the elections designated by the act of the legislature approved December 24, 1890, as the general election for county officers. It was one of the elections designated by the act approved January 10, 1891, as a general election at which county and precinct officers should be elected, and State officers elected to fill vacancies occurring by operation of law or the constitution of the State. The same act provides for the election of all State officers at the general election in 1894 and every four years thereafter, these being the periods when the regular terms of such officers will expire. The election held on November 8, 1892, was one of the elections specified in the act approved January 21, 1891, as a general election at which should be elected, among others, all State and district executive and judicial officers which are made elective by law whenever there is a vacancy in any State or district executive or judicial offices. Still it is contended that the election of Governor Osborne was not, within the meaning of the constitution and the statutes, "at a general election;" that as to the office of Governor, the election was special; that vacancies in office for unexpired terms must necessarily be filled at special elections, and conversely that the election of an officer at a general election is necessarily for a full term. Such is not the idea of the constitution in providing that "if a vacancy occur in the office of a justice of the supreme court the Governor shall appoint a person to hold the office until the election and qualification of a person to fill the unexpired term occasioned by such vacancy, which election shall take place at the next succeeding general election." Const., Art. V, Sec. 4. Such is not the idea of these statutes in providing, in accordance with the constitutional idea and policy, for filling vacancies for unexpired terms at

general elections. Such is not the idea of the legislation of Wyoming on this subject for many years preceding the adoption of the State constitution. It has been the uniform policy to fill remaining portions of the unexpired terms of officers in cases of vacancy, as far as practicable, at general elections. And this is the evident policy of our constitution and of our present statutes. In the statutes in force for many years prior to the constitution, the only elections called special elections were those held at a time different from the time of holding a general election. See Rev. Stat. Wyo., Secs. 1084 and 1095. In our laws in force at the present time, the only elections termed special, are those held at a time different from the time of holding a general election. See Sess. Laws 1890, p. 157, Sec. 3; p. 164, Secs. 46, 48, 49, 50, 53 and 54.

It would seem that Governor Osborne was elected at a general election and should assume the duties of his office, under the constitutional provision quoted, on the first Monday in January, succeeding his election, and that his attempt to do so on December 2d, 1892, was premature, and his attempted qualification on that day void. But waiving these views, or supposing them to be incorrect, and that the election of November 8, 1892, as to Governor, was not a general but a special election, and that the constitutional provision that all State and county officers elected at a general election shall enter upon their respective duties on the first Monday in January next following the date of their election or as soon thereafter as possible, does not apply, how would the question then stand? This is the view taken by the defense, and it leaves the decision of the controversy entirely dependent upon a construction of the act approved December 24, 1890, already quoted, known as the succession act. It must be borne in mind that this act, among other things, provides for the calling of an election in case of vacancy in the office of Governor "to fill the unexpired term, which election shall take place at the same time as the general election for county officers, and such election together with the returns and canvass thereof, shall be conducted in all respects as though it was an original election for Governor. When the State canvass-

ing board shall have canvassed the vote of the election, as aforesaid, and in the manner provided by law, declared a person of such election to be elected Governor, such person shall, within thirty days after such canvass, or as soon thereafter as possible, qualify and assume the duties and powers of Governor, and shall be the Governor of the State of Wyoming for the remainder of the unexpired term of Governor." But the defense claims that there is no provision made for the canvass of the vote cast at an original election or any election for Governor; and that there is no "manner provided by law" for the declaration by the State canvassing board of the election of a person to the office of Governor. Therefore, it is argued, a candidate for Governor may ascertain for himself from the canvass of the votes in the different counties by the county canvassing boards, whether he has been elected or not; and if elected to fill a vacancy may at once assume the powers and duties of the office of governor. If this view is correct, it constitutes a serious and alarming defect in our election laws. It is a principle as old as the common law that a judicial officer may not sit as such for the trial of his own cause. The evil is not less when any citizen alone and unaided, without even the sanction of an official oath for his action, may pass upon the fact of his own election to high official position. If one person may do this, another may. One candidate may proclaim his election to and his assumption of the office of Governor. Another may say to him: "No. You were not elected. Here are several hundred votes counted for you in each of several precincts where no election was held. I received a majority of the votes cast, and I here and now proclaim myself Governor of the State." The people have no rights which they hold more sacred than their political rights. They realize that the security of all their other rights depend upon these. They look with severe scrutiny upon any arbitrary action by interested parties affecting the result, or the orderly ascertainment and declaration of the true result, of the balloting at our elections. Questionable constructions of law different from the general understanding and varying from the intent as apparent to the non-profes-

sional mind, and affecting these great public interests, are
peculiarly exasperating. Arbitrary or irregular proceedings
in matters of this nature are adapted above all others to pro-
duce internal dissensions, and, unless checked by prudent
counsels, civil strife and conflict.

Much has been said about legislative construction of stat-
utory law. It is also said that it is the business of legis-
latures, not to construe, but to make law. The object of the
courts in construing legislative enactments is to ascertain from
the language employed, the true intent and meaning of the
legislature and to enforce it when ascertained. And all
statutes in pari materia are to be considered together in ascer-
taining the legislative intent. In this way a legislative en-
actment upon any subject may be considered, in so far as it
aids in arriving at the true meaning and intent of other
statutes upon the same subject, as a legislative construction.
There could not well be a clearer or stronger legislative con-
struction of existing law as to the duty of the State canvassing
board to canvass the vote for Governor and declare the result
than that contained in the language above quoted from the
act of December 24, 1890. It is a clear declaration of the
legislative understanding that there is a' State canvassing
board, and that it is its duty to canvass the vote for Governor,
and to declare the result. Is this legislative construction so
clearly wrong that it must be overruled? The statute to be
construed is part of Section 141 of Chapter 80 of the session
laws of the Eleventh Legislative Assembly of Wyoming Ter-
ritory, known as the election law: "Sec. 141. The Secretary,
Auditor and Treasurer of the Territory, or any two of them,
in the presence of the Governor shall proceed within thirty
days after the election and sooner if all the returns be received,
to canvass the votes given for delegate in Congress and all
members of the Council and House of Representatives, and
the Governor shall give a certificate of such election to the
person having the highest number of votes for each office."
This is one of the laws of the Territory which is continued in
force in the State of Wyoming, and it is not questioned that
the Secretary, Auditor and Treasurer of the State constitute

a State canvassing board. The claim of the defense is that this board has no authority to canvass the vote for any officer except those named. So it results from this construction, if it be adopted, that we have a State canvassing board without authority to canvass the vote cast for State officers generally or for any officer elected by general vote of the electors of the State, except Representative in Congress. This, of itself, is an absurdity sufficient to raise serious doubts of the correctness of such construction. It is plain that the object and legislative intent in establishing a State canvassing board is to have such board canvass the vote cast for State officers generally, whether specified in the act or not. If some were specified and others left out, it might give ground for a different presumption as to those not mentioned. But such presumption would be but a weak one. In the act under consideration, no State officers are mentioned. Members of the legislature are not included in our statutes under the designation of State officers, but in each enumeration of officers are separately stated. So with the Representative in Congress.

If other provision had been made for the canvass of the returns from the different counties of the vote for State officers a different question would be presented. No such provision has been made. Our constitution and our laws contemplate and require an official canvass of the returns from the counties of the votes cast therein for State officers and an official declaration of the result. The appropriate agency for making such canvass and declaring the result thereof is provided in the State canvassing board. It is no strained construction of existing statutes to say that the clear intent of the legislature is to be carried into effect and that this board may do its appropriate work. People ex rel. Dean v. Co. Com., 6 Col., 209. The mode of procedure is prescribed in the statute.

It results from any view that we can take of this case, and whether the election of Governor Osborne was at a general or a special election his attempted assumption of the duties and powers of the office of Governor on December 2, 1892, before the canvass of the vote and declaration of the result by the State canvassing board, was premature and invalid. The case

of Governor Hampton, occurring during the stormy period of reconstruction, is the only case cited to sustain the course pursued by Governor Osborne. The cases are very materially different. Governor Hampton did not attempt to assume the duties of the office until the time had arrived and passed when it was his duty to do so. He did not do so until after the returns had been opened and published by the speaker of the House of Representatives in the presence of the House and such members of the Senate as chose to attend. The only irregularity in the proceedings was that the Senate declined to attend in a body. The irregularity was one that could not affect the result of the election or, it would seem, the duty of the speaker to open and publish the returns. It was conceded that Governor Hampton had received a majority of the votes cast at the election. He waited until all these proceedings were had, in attempted compliance with the law, before assuming the duties of the office. See also Goff v. Wilson (W. Va.), 9 S. E., 26; Carr v. Wilson, Id., 31; State v. Mackin, 41 Mo. App., 99; Hubbard v. Crawford, 19 Kansas, 570; Bowler v. Eisenhood (Dak.), 12 L. R. A., 705; State ex rel. Morris v. Bulkeley, 61 Conn., 287; State ex rel. Benton v. Elder, 31 Neb., 169.

Our law requires the State canvassing board to make the canvass within thirty days after the election, or sooner if all the returns be received. If the returns be not all received within thirty days from the election further time must be taken to procure them. On December 2nd, the thirty days had not elapsed. Neither had all the returns been received. The canvass of the returns from the county clerks had not been made nor the result declared in the manner provided by law nor in any manner. This canvass was completed on the 31st day of December, 1892.

The pardon of the petitioner issued by Amos W. Barber on the 28th day of December, 1892, was issued by him in the lawful exercise of his authority as acting Governor of the State of Wyoming, and is a valid pardon. It is ordered that the petitioner, James Moore, be discharged from custody by the

respondent and defendant, George L. Briggs, the warden of the penitentiary at Laramie, Wyoming.

Honorable Gibson Clark, one of the justices of this court, having announced his disqualification in open court, the remaining justices of this court called in Honorable Jesse Knight, judge of the District Court of the Third Judicial District, under the constitutional provision, who sat with them in the hearing and determination of this proceeding.

Groesbeck, C. J., and Knight, Dist. J., concur.