(37 Misc. Rep. 390.)

### GUDEN, Sheriff, v. DIKE.

(Supreme Court, Special Term, Kings County.   March, 1902.)

**1. COURTS—JURISDICTION—ACTS OF GOVERNOR—REVIEW.**

Though the process of the court cannot be directed against the governor officially, the validity of his acts, when affecting the rights of individuals by removing an officer from a public office, may be passed upon judicially in civil or criminal proceedings to which he is not a party.

**2. SHERIFF—REMOVAL BY GOVERNOR—MISCONDUCT.**

Const. art. 10, § 1, provides that the governor may remove certain officers within the term for which they shall have been elected, giving to such officers a copy of the charge against them and an opportunity to be heard. Among the officers mentioned in said section are sheriffs. *Held* to give the governor no authority to remove a sheriff for having before his election promised an attorney to appoint him his official counsel in return for the attorney's political support and influence at the election.

**3. SAME.**

The acts for which a governor under the constitution may remove a sheriff must have been committed by him in office.

**4. SAME—CERTIFICATE OF REMOVAL.**

Where the certificate of removal of a sheriff states that charges of malfeasance, misfeasance, and neglect of duty "in office" have been preferred against the sheriff before the governor, the court may go beyond the certificate to see if such facts are true.

In the matter of the application of Charles Guden, as sheriff of Kings county, for an order to compel Norman S. Dike to deliver the books and papers belonging to the office of sheriff.   Granted.

The applicant was duly elected as sheriff of Kings county, and qualified and entered into the office on January 1, 1902.

Charges were thereafter filed against him with the governor, and after a hearing the governor made a certificate dated March 7, 1902, purporting to remove the applicant from the office, and thereupon made a certificate purporting to appoint Mr. Dike, the respondent, to fill the alleged vacancy thus created.   Thereafter Mr. Dike took possession of certain books and papers of the office.

The charges against the applicant were of acts alleged to have been committed by him before he was elected to the office, which are stated in the opinion.

The claim of the applicant is that his alleged removal was an unconstitutional and void act, in that the governor had no jurisdiction to try or remove him except for charges of neglect or misconduct in office, and not for any alleged acts done by him before he came into office, as was done.

Benj. F. Tracy and J. A. Wernberg, for applicant.
Gilbert D. B. Hasbrouck, opposed.

GAYNOR, J.   It is not a pleasant thing to have to decide this case.   It is peculiarly irksome and delicate to enter into an investigation of an act of the governor of the state, and decide whether he exceeded his constitutional powers.

The question involved is whether the act of the governor in removing Charles Guden from the elective office of sheriff of Kings county was within the powers conferred upon the governor by the people of the state through the constitution, or whether it was what is called in law a usurpation of power, and therefore void.

The claim of the applicant is that his removal by the governor was an unconstitutional act, and therefore null and void, in that the governor had no jurisdiction to try or remove him except for neglect or misconduct in the office, and not, as was done, for acts alleged to have been done by him before he came into the office, or was elected thereto. There is no purpose to review the proceeding had before the governor, and ascertain whether the evidence was sufficient to sustain the charges made. The point is whether any valid charges were made and found against him at all, and therefore whether the governor had any jurisdiction to act at all.

I. At the threshold of the discussion it is urged with force and earnestness that there is no power in the judiciary to pass upon acts of the governor affecting individual rights at all, but that victims of such acts, however much they may be in excess of the power given to the governor by the people through the constitution and laws, are absolutely without protection or redress in the courts. If that were so we would be living under a despotism, and not under a free government. But it is not so. Such a claim sounds most extraordinary in this day and generation. If any considerable number shared in it, it would be proof that the liberties which past generations strove and sacrificed for, and finally attained and handed down to us as a priceless heritage, and for the preservation of which careful limitations were set on official power, are already growing dim in men's minds, and in process of decay. It can scarcely need a word of refutation. It refutes itself in every free state in the world. Not since constitutional government became established in the country from which our law and principles of government have been chiefly derived, has such a proposition had any truth or life in it.

Under our system of government, not even solemn statutes enacted by our legislature and chief executive combined, are beyond attack in the courts of justice by the humblest individual in the state who is affected in his life, liberty or property by them, if they be in violation of the limits of legislative power set by the constitution. It is a common occurrence for the courts to declare such statutes void. It is true that no suit or direct proceeding may be taken in the courts against the legislature and executive to annul such laws; but the questions of their validity may nevertheless be raised and decided in any judicial action or proceeding between individuals, or between the state and an individual, involving individual rights.

In the same way and on the very same principle, any act of the executive alone may be brought in question. The governor or king cannot be called to account by the courts, but his acts can be questioned there. This has been so often decided, and is so well known not only to lawyers, but also to all students of constitutional government, that precise authority for it scarcely needs to be cited. It suffices to cite the very recent declaration of it by the highest court of the state, viz.: "While we cannot touch the person of the governor, we can pass upon the effect of his acts and decide whether they are valid or invalid." People v. Hoffman, 166 N. Y. 462, 60 N. E. 187, 54 L. R. A. 597. The writs and processes of courts cannot be directed against or touch the governor officially, but the validity of his

acts may nevertheless be passed upon judicially in civil or criminal actions or proceedings to which he is not a party, but in which the rights of individuals as affected by his acts are at stake. If, for instance, the governor should unlawfully arrest an individual, the writ of habeas corpus may not lie against him for the production of the prisoner, but it will lie against the jailor or other person in whose custody the prisoner is under the governor's warrant. People v. Brady, 56 N. Y. 182; In re Edymoin, 8 How. Prac. 478.

But this subject ought not to be discussed further, notwithstanding the apparent and surprising confidence with which it has been urged. That it should be discussed at all under a government by the people like ours, in which officials, high and low alike, may exercise just so much power as the people have delegated to them, and not an iota more (all in excess being a · usurpation and void), and in which no one, however high, is a law unto himself, or above the law, i. e., above the will of the people, may well be deemed extraordinary.

No one at all acquainted with the history of the long and patient struggles, sufferings and sacrifices of the people in past times, by which by painful and slow degrees through protracted courses of years, despotic power was gradually diminished, and finally done away with altogether, and government by the people themselves through laws and limitations on official power of their own making was established, can listen to the claim that any citizen, however humble, is still subject in any of his rights to the arbitrary power of any official, from the king or chief executive down, without a feeling of resentment; and so long as that healthy feeling remains alive in an educated people, and is shared by their judiciary, the rights and liberties of the individual will remain safe.

2. It was also urged that Guden is of a mean and unworthy character, and that his removal by the governor was acceptable to the people, or to many people. But this is the language of unthinking persons, and no such consideration can have the slightest place or efficacy here. The personality and character of Guden sink into insignificance in comparison with the vital constitutional question involved in this case. To refuse him protection and redress if he be entitled thereto, would be worse and far more dangerous to society than anything he was accused of before the governor. There is much to fear from unworthy and evil men in office, and from their base vices, but it should never be forgotten by a free people, that they have far more to fear from the exercise and growth of the vice of arbitrary power in government, than from all other evils and vices combined.

3. The way being now cleared for that purpose, a consideration of the act of the governor which is called in question is in order.

Charles Guden was elected sheriff of Kings county at the last general election, and having qualified entered into his office at the beginning of the term thereof on January 1. Thereafter written charges against him were filed with the governor, and his removal asked for thereon. The charges found against him embraced nothing whatever against him in his office, or touching the performance of the duties of his office, or that occurred after he went into

office. They covered only things he was alleged to have done before his election to office. One charge was that after being nominated for the office he promised and agreed with a certain counsellor of this court that in return for his political support and influence at such election he would in the event of his election appoint him to the statutory position of counsel to the sheriff. The other charges were of the same kind, and therefore do not need to be enumerated here. Moreover, the governor did not find him guilty of them, but only of the said charge of promise of appointment.

The precise question is whether the governor had jurisdiction to entertain charges and remove from office for alleged acts of Guden committed before he entered into office, or whether his jurisdiction was limited to charges of acts committed by Guden after he came into office only. The only power of removal which the governor had in the premises is that conferred by a clause of section 1 of article 10 of the constitution, which is as follows:

"The governor may remove any officer in this section mentioned, within the term for which he shall have been elected; giving to such officer a copy of the charges against him, and an opportunity to be heard in his defence."

What the nature of the charges must be, or what charges will suffice, is not in such clause or elsewhere specifically prescribed, and that is what gives rise to the question in dispute. The officers mentioned in the said section are sheriffs, county clerks, registers and district attorneys, all county officers. But by sections 97 and 122 of the charter of the city of New York the governor is given in so many words power to remove the mayor and comptroller of that city "in the same manner as sheriffs."

Thus all that we have is that the governor is given the power to remove these high officers, and the only manner prescribed is by this clause of the constitution, viz., he may remove an officer "within the term for which he shall have been elected," after "giving to such officer a copy of the charges against him, and opportunity to be heard."

These are clear words of limitation on the power given. Concededly, to remove without any charges being made, or without a hearing, would be unconstitutional and void. On the very same principle, if the charges filed or found are of facts which can not in law be charges at all, they give no jurisdiction, and to remove on them would be an unconstitutional and void act. Could it be contended that charges that the official had kept before coming into office, or was keeping, a liquor saloon, or that he had been or was an agnostic, would give the governor jurisdiction to remove? Nevertheless because the nature of the required charges is not specifically defined, the claim is set up that any kind of a charge, i e., a charge of anything the governor may deem sufficient, and done by the accused at any time in his life, whether before or after he came into the office, will suffice.

It does not seem possible to entertain a doubt that the governor is not given any such sweeping and dangerous power as this. There is nothing in the words used to indicate it, and during the 80 years that this provision has been in the constitution, no governor or

any one else up to the present time has claimed, or, so far as known, supposed, that such power existed. To interpret the words of the constitution as conferring power on the chief executive not only to remove officials chosen by the people for breaches of official duty committed in their offices, but also to remove them for anything else he may see fit, whether committed before or after they got into their offices, would be contrary to the development and history of our system of government, and to the law and practice in similar cases from the earliest times.

When the words of the clause of the constitution in question are looked to closely, they are found to confer no such power, but the contrary. They give the governor the power to try and remove officials, but require as a condition precedent to his exercise of such power, that "charges" be first presented against them. The clause does not in so many words say that such charges shall be of acts or omissions in office. Nor does it say they may be of acts committed before the official came into the office. That it means acts or omissions in office, however, we all know. But on what does the claim rest that it means more than that, i. e., that it also means acts committed before the official came into the office, i. e., that his whole life is subject to attack and trial before the governor? We all know that it means acts in office. To hold that it also means acts committed before the official came into office, would be to read into the clause something which is not there, and which would be most astonishing in this or any other free state if it were there; for it would allow an appeal from the people who elect their officials to the governor on the question whether the officials of their choice should serve or not. The plain purpose of the provision is only to make the official responsible as an official, i. e., for his conduct in office, to the governor, and not to make him responsible or answerable at all in his private character.

And the words used forbid the idea that they confer the power claimed. The power given is to remove on charges an official "within the term for which he shall have been elected." If the intention was to empower the governor to remove for acts committed in the man's past life, the governor would not be thus limited to action "within the term", i. e., after the official had come into office. On the contrary, the governor would have been empowered to hold his court and try elected officials in advance of the beginning of their terms, and exclude them from entering therein, and a regular court for that purpose by the governor after each election would be in order.

And there is broader ground to stand upon. The clause of the constitution in question has to be interpreted in harmony with our theory and system of government, and also with the law and practice in like cases as it had existed up to the time of its enactment. To interpret it contrariwise would not only be unreasonable but contrary to settled rules of construction. The words used had a settled meaning at the time they were put in the constitution. They had not been theretofore taken to mean a power of removal for anything

done by the official before he came into the office. The common law power of removal was for neglect or misconduct in office only, as will be seen later on, except for indictment and conviction of a crime so infamous as to render the offender unfit to hold any office. It was in this light that this clause was framed, and it was this power and no other that was intended to be put in the constitution. The meaning which such general words had at common law was continued in the constitution. This is in accordance with a settled rule of construction. Suth. St. Const. § 291. To now interpret such clause, so framed and intended, as conferring the unrestrained and unlimited power of removal contended for, would be to substitute a meaning which a general power of removal never had from the beginning.

The power of removal for neglect or misconduct in office had been exercised from time immemorial, and needed to be lodged somewhere, and the people lodged it in this instance through the constitution with the governor. That they should confer such power in respect of neglect or misconduct in office was in accordance with our system of government, its history and traditions, and established law and practice. That they should mean to go further, and extend such power to the removal of officials at the will of the governor for anything he saw fit, whether committed by them before or after they came into office, is an idea so contrary to our theory of government, its history and traditions, and immemorial common law and practice, that it cannot be entertained since it is not expressed by the people in unmistakable words. The setting up of such an appeal from the electors to the governor was never dreamed of.

In England the common law on the subject was clearly stated by Lord Mansfield for the court in Rex v. Richardson, 1 Burrows, 517. The sum and substance of what was there laid down on that head (page 538) was that where the power of removal existed in general terms, as is the case here, the particular causes for removal not being specified, the power could be exercised only for offenses committed by the official in office, and against the duties of his office, except for other offenses either outside or inside of his term of office of so infamous a nature as to disqualify him for office, in which case there had first to be an indictment and conviction. This latter ground of removal no longer exists in this state, for the reason that by provision of statute any sentence of imprisonment in a state prison ipso facto forfeits and vacates any public office held by the person sentenced. Pen. Code, § 707.

In this country the decisions of courts are equally clear. Speed v. Common Council, 98 Mich. 360, 57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555; State v. Walker, 68 Mo. App. 110; State v. Common Council, 25 N. J. Law, 536; Com. v. Shaver, 3 Watts & S. 338; State v. Common Council, 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595; People v. Weygant, 14 Hun, 546; People v. McGuire, 27 App. Div. 596, 50 N. Y. Supp. 520; Throop, Pub. Off. c. 16. In the first of these cases the language of the court is as follows:

"It is very well settled in this country that the misconduct for which an officer may be removed must be found in his acts and conduct in the office from which his removal is sought, and must constitute a legal cause of removal and affect the proper administration of his office."

The other cases cited are also quite as explicit. The foregoing was of course said in respect of a general power of removal for cause, without any causes being specified by law. When the causes for removal are specified by law, the present question cannot arise at all. In the second case cited, in addition to laying down the general rule that misconduct in the office and not previous misconduct is necessary to give jurisdiction for removal, the court says:

"There is no restriction upon the power of the people to elect, or the appointing power to appoint, any citizen to office, notwithstanding his previous character, habits or official misconduct."

It has been discussed to some extent during the last 25 years whether in case an official succeed himself in office, his derelictions during his first term may not suffice for his removal from his second term, the two terms being deemed continuous and as one term; but principle and authority are against it, though there seems to be one case for it. State v. Welsh (Iowa) 79 N. W. 369. That case does not seem to have been much considered by the court, and the decision does not seem in harmony with the statute under which it arose. But the point has no application to the present case.

4. Light is shed on the true construction of the clause of the constitution in question by reference to the construction of contemporaneous statutes of the same kind and tenor. The statute preferring and protecting veteran soldiers and sailors as appointees and employees in the public service, as it read up to 1896, provided in the same general terms that they could not be removed "except for cause shown after a hearing had," but did not specify what causes would suffice; and it is almost if not quite as indefinite in its present amended form. A similar general provision is and has long been in the charter of the city of New York in respect of policemen, and similar provisions exist in the charters of other cities. So far as appears such statutes have been uniformly construed as meaning acts of the incumbent after he came into his office or place. If a new construction is to be established in the present case, it must be a general one, and affect the entire civil service of the state. The result of that would be easy to foresee.

5. Although no competent charges whatever against Guden in his office were made before the governor, as has already been seen, the governor nevertheless certifies in his certificate of removal that such charges were made. The certificate is signed by the governor and sealed with the seal of the state, and is as follows:

"Charges of malfeasance, misfeasance and neglect of duty in office having been preferred against Charles Guden, the sheriff of the county of Kings, by Thomas O. Piper and another of said county, and a copy of such charges having been served upon him and an opportunity given him to make a defence thereto, and he having thereafter been heard before me at the executive chamber in the city of Albany in person and by counsel, and the witnesses produced by him having been duly examined; now, therefore, it

appearing to my satisfaction that the usefulness of the said Charles Guden in the office of sheriff of the county of Kings is at an end, it is hereby ordered that the said Charles Guden be and he hereby is removed from the office of sheriff of the county of Kings."

This certificate is untrue in alleging that charges of malfeasance, misfeasance and neglect of duty "in office" were preferred; but the question is presented whether it must be taken as true and binding, and whether, therefore, a court may go behind it, and look at the charges filed, in order to get the truth, i. e., that charges such as are mentioned in such certificate were never preferred. If this applicant is foreclosed by this untrue certificate, he is in evil case, indeed. But he is not in such case. The charges themselves may be looked into to find the truth. The certificate and charges are the judgment roll, so to speak. If, for instance, no charges at all had been preferred, would this false certificate be unassailable? No authority for such a proposition has been suggested; and the case actually here is no different, for charges not sufficient to give jurisdiction are in fact and in law no charges at all. The charges in this case were no more effectual to confer jurisdiction than charges that Guden was or had been an infidel, or kept or had kept a liquor saloon, would have been.

6. The decision of the court of appeals in the case of In re Brenner, 63 N. E. 133, rendered since this proceeding was begun, leaves no doubt of the right to go back of a certificate of appointment to office in a proceeding like this, and inquire whether it be void although fair on its face. That was a proceeding like this, and it was there held that the certificate of appointment of one of the parties, and the act under which he was appointed, could be assailed and declared unconstitutional and void. And so in this case the certificate of appointment of the governor's appointee may be gone back of, and the act of the governor in making it declared unconstitutional and void. The position of the governor is no better or different than if he had acted under an unconstitutional statute.

7. Though this proceeding was begun to test the right of Mr. Dike, the governor's appointee, to such books and papers of the office as he had already got possession of, he refused to await a hearing and decision after the notice and papers herein had been served upon him, and violently broke into the sheriff's office in this court house, where the appellate division of the supreme court for the Second judicial department, the seven trial parts of the supreme court, and the two trial parts of the county court sit, and seized the books and papers there, and put the incumbent out, as was stated and conceded on the argument. Such a lack of respect for law and order, and such lawlessness, should not be allowed to pass unnoticed in the disposition of this case, for if it should be generally followed, established government would become degraded. It is only a few weeks ago that policemen of this city took sides in a dispute about title to office, and lawlessly pulled a city magistrate from the bench. If such things could be tolerated, established government could be pulled down and superseded in a day. It is, however, fair to say of Mr. Dike, who has a fine character in this com-

munity, that it was stated that he acted, and he presumably did act, under what he deemed controlling advice or authority.

In conclusion it is found that the act of removal of the elected sheriff by the governor was without jurisdiction, unconstitutional and void, and that he is still sheriff.

The application is granted.