ERNEST RATHBUN, Appellee, v. J. N. BAUMEL, Warden, Appellant.

**PARDONS:** Revocation—Jurisdiction of Equity. A court of equity
1  has jurisdiction, in a direct proceeding by the attorney-general, to cancel an executive pardon because of the fraud of the pardonee in inducing the execution and delivery of the pardon.

STEVENS, C. J., dissents.

WEAVER and ARTHUR, JJ., dissent, holding generally that a pardon voluntarily executed and delivered by the governor and unquestioned by him is not reviewable by any court.

**PARDONS:** Revocation. Principle recognized that a duly executed and
2  delivered pardon may not be revoked by the governor.

**JUDGMENT:** Conclusiveness—Cancellation of Executive Pardon. A
3  decree in equity which cancels an executive pardon because of the fraud of the recipient of the pardon in inducing its execution by the governor may not be collaterally assailed by the recipient of

the pardon, when he was a party to the proceeding, duly joined issue therein, and took no appeal.

**PARDONS:** Surrender—Estoppel. The recipient of an executive pardon may predicate no right on the instrument after voluntarily producing the same in court for the specific purpose of having it judicially canceled, and after a decree of cancellation is entered, from which he takes no appeal.

**HABEAS CORPUS:** Judgment—Conclusiveness. A judgment in habeas corpus proceedings is *res adjudicata* when the *identical* question, with no change of status, is again presented to the same or another court.

DECEMBER 15, 1922.

REHEARING DENIED DECEMBER 14, 1923.

APPEAL from an order by Hon. F. F. Dawley, judge of the district court in and for the eighteenth judicial district, upon hearing in habeas corpus proceeding. The facts and records are sufficiently stated in the opinion.—*Reversed.*

*Ben J. Gibson,* Attorney-general, *B. J. Flick,* Assistant Attorney-general, and *B. E. Rhinehart* and *Charles S. Macomber,* County Attorneys, for appellant.

*R. S. Milner* and *G. P. Linville,* for appellee.

FAVILLE, J.—The appellee was indicted by the grand jury of Ida County, on November 17, 1917, charged with the crime of rape. He was tried on said indictment, and on December 22, 1917, was convicted, and on December 31, 1917, duly sentenced to a term of imprisonment in the reformatory, at Anamosa.

On November 16, 1918, the then governor of the state, Hon. W. L. Harding, acting upon the written application of appellee for executive clemency, signed and delivered to appellee a pardon for said offense. A copy of said pardon was duly filed in the office of the clerk of the district court of Ida County, on December 7, 1918, and made of record in said office.

Thereafter, on January 6, 1919, an action in equity was instituted in the district court of Ida County, for the cancellation of said pardon. Said action was brought in the name of

the state of Iowa, and was instituted by the county attorney of Ida County. In said action, the attorney-general of the state, without objection, appeared by petition of intervention. Said officer joined in all of the allegations and the prayer of the petition filed in the name of the State. By order of court, said intervention was allowed, and the attorney-general, in his official capacity, was made a party plaintiff. It was alleged that said pardon had been procured from the governor by fraud practiced by the appellee herein upon the governor; that appellee, in procuring the same, had been guilty of a suppression of truth, a suggestion of falsehood, and misrepresentation of evidence. These matters were alleged specifically and in detail, setting forth wherein and by what means it was claimed that a fraud had been committed by appellee upon the governor in procuring said pardon. It is unnecessary to set out said averments. The appellee appeared in said action in person and by attorney, and filed answer, which, with certain admissions, was a general denial.

On February 21, 1919, the appellee filed a petition in habeas corpus in the district court of Ida County. In said petition the appellee, as plaintiff, alleged that he was in custody under a mittimus that had been issued on the judgment and sentence above referred to. Appellee alleged that said commitment was void, because of the pardon issued to appellee, and prayed that he be discharged from restraint under said writ. In this action in habeas corpus, the sheriff of Ida County, who then held the appellee in custody under a mittimus issued on the judgment in the rape case, was made defendant.

An answer was filed in said habeas corpus case, which, among other things, alleged that the pardon of appellee was invalid and void for fraud in its procurement, and that the application for a pardon was never referred to the board of parole, as the statute requires.

The suit in equity to cancel the pardon and the suit in habeas corpus were heard together. At said time, the appellee was present in person and by attorney, and took part in the proceedings. It was stipulated of record, in open court, by all parties, that a decree should be entered in the equity case, adjudging the pardon to be void, and ordering it canceled. The

court called the appellee before him, and appellee was interrogated by the court as follows:

"Q. Do you understand that this proceeding cancels your pardon, or the pardon granted to you by the governor, and that the proceeding takes it away from you, and you get no rights under it? A. Yes, sir. Q. Is it satisfactory to you to have that done? A. Yes, sir."

After all this, a decree was duly entered in said equity proceedings, finding that said pardon had been obtained by fraud and deceit practiced by the appellee upon the governor, and decreeing that said pardon was void, and ordering that the copy of said pardon held by the appellee be surrendered and marked "canceled," and that the copy of the pardon on file in the office of the clerk be marked "canceled." No exceptions were taken to this decree by appellee, and no appeal taken therefrom.

The appellee thereupon surrendered the copy of the pardon held by him, to the clerk of the district court of Ida County, who marked the same "canceled," and retained the same. The clerk also marked "canceled" the copy that had been filed in his office.

In the habeas corpus case heard at the same time, the court, upon the issues joined, and after a hearing on the merits, adjudged that the pardon was absolutely void, and denied the writ prayed for. No review of this order was ever had or sought.

Thereafter, the appellee was confined in the reformatory, at Anamosa, under commitment, until the petition for a writ of habeas corpus was filed in this cause.

In said petition the appellee alleges his conviction and sentence in the district court of Ida County, as above set forth, and alleges that he was duly pardoned for said offense, on November 16, 1918, and that because thereof he is unlawfully deprived of his liberty under said commitment. The appellant, by way of answer, alleges all the matters and things that were done in connection with said pardon, and the proceedings in equity and in habeas corpus, as hereinbefore set forth, and prays that the writ be denied.

I. The first question for our determination is as to the effect of the decree in equity, canceling the pardon. It is earnestly contended that the court had no jurisdiction to act in the

1. PARDONS:
revocation:
jurisdiction
of equity.

equity suit to cancel the pardon, and that the decree entered was an unwarranted interference by one department of the state government with a co-ordinate department, and that the decree is void. This case does not present the question of interference by the judiciary with the voluntary and valid act of the executive. Not at all. It may be granted, for the sake of the argument, that, if the governor acted fraudulently, or from improper motives, in granting the pardon, he is answerable therefor to the people, or subject to impeachment, and that the courts cannot question the motives for his acts, within the scope of his constitutional authority, even though he acted corruptly. But no such question is presented in this case. There is no claim, hint, or suggestion that the governor was guilty of any semblance of fraud, or that he in the slightest degree acted corruptly. The fraud charged was not *by* the governor at all. It was a fraud *upon* the governor.

The written instrument, having been once executed and delivered, cannot be revoked by the governor after he discovers the fraud. All authorities so declare. That being true, are the courts impotent to protect their judgments from annulment by fraud perpetrated upon the pardoning power? This is no interference by the judicial department with the constitutional prerogatives of a co-ordinate branch of the government. The court is not asked to investigate or pass upon the motives of the governor in granting the pardon. No such question is in the case. It is the acts of the *appellee,* who is claiming a benefit under the written instrument, that are the subject of the inquiry. Here we have a situation where a man duly convicted of crime seeks the annulment of the judgment against him. He has possession of a written instrument which, if valid, annuls that judgment. It is contended that the instrument was procured by his own fraud, and is therefore invalid.

A court of equity has the power to investigate his title to such written instrument, and to inquire whether or not the same is valid. This is not an interference with the prerogatives of the executive. It is merely an inquiry into the rights of the party holding such instrument to claim anything thereunder.

2. PARDONS:
revocation.

The governor may issue pardons, without let or hindrance on the part of the judiciary. No inquiry is made in regard to *his* acts. But the party seeking to benefit by the official act of the governor may certainly have his *own* acts investigated for fraud.

Suggestion is made that the governor did not institute the proceedings in equity for cancellation of the pardon. This is merely begging the question. If a court of equity has no power to act in such a case, it would be as much without jurisdiction to annul the pardon at the instance of the governor as at the instance of the head of the department of justice.

That being true, the question at this point is whether or not a court of equity can entertain a suit to vacate a pardon in *any* event. If it can do so, it certainly can act at the instance of the attorney-general, acting for the people of the commonwealth. It is a fundamental proposition that fraud in the procurement of any written instrument vitiates it in the hands of one seeking to benefit thereby. Likewise, it is one of the functions of a court of equity to set aside and hold for naught any written instrument that has its inception in fraud. Also, it is an established maxim that one cannot lawfully profit by his own wrong. One of the most important functions of a court of equity is to inquire into the validity of written instruments that are impeachable for fraud. A pardon must be evidenced by a written instrument. It is not sufficient, to vacate and supersede the judgment of a court, for the executive to orally say to the convict, "Go and sin no more." A pardon is a deed, to the validity of which delivery and acceptance are essential. *United States v. Wilson*, 7 Pet. (U. S.) 150; *Commonwealth v. Halloway*, 44 Pa. St. 210; *In re De Puy*, 7 Fed. Cas. No. 3814; *Carpenter v. Lord*, 88 Ore. 128 (171 Pac. 577); *De Leon v. Director of Prisons*, 31 Philippine 60; *Ex Parte Ray* (Okla. Cr. App.), 193 Pac. 635.

Can this written instrument—this deed—be subject to impeachment for fraud in its procurement? The pardon issued in the instant case was a written instrument—a deed. By it, the solemn judgment of a court was, in effect, vacated and set aside. The party obtained such written instrument by his own fraudulent act, both as to its execution and delivery.

The people of the state have a direct and vital concern in

this matter. The state, in its sovereign capacity, secured the conviction of this appellee, for a heinous and abhorrent crime. Can the state, in a court of equity, by a direct proceeding, contest the validity of the instrument which it is claimed renders nugatory the judgment which the state obtained?

Blackstone, in his day, declared:

"It is a general rule that, whenever it may reasonably be presumed the king is deceived, the pardon is void. Therefore, any suppression of truth or suggestion of falsehood in a charter of pardon will vitiate the whole; for the king was misinformed." 4 Blackstone's Commentaries (Lewis's Ed.) * 400.

Wharton, in his work on Criminal Procedure, Volume II (10th Ed.), Section 1469, says:

"A pardon fraudulently procured will, it has been held, be treated by the courts as void. And this fraud may be by suppression of the truth, as well as by direct affirmation of falsehood. Yet this test should be cautiously applied by the courts, for there are few applications for pardon in which some suppression or falsification may not be detected. It is natural that it should be so, when we view the condition of persons languishing in prison, or under sentence of death; and if departure from rigid accuracy in appealing for pardon be a reason for canceling a pardon, there would be scarcely a single pardon that would stand. The proper course is to permit fraud to be set up to vacate a pardon only when it reaches the extent in which it would be admissible to vacate a judgment. And an erroneous recital is no proof of fraud."

In *Dominick v. Bowdoin,* 44 Ga. 357, the action was in habeas corpus. The defendant, as sheriff, relied upon a bench warrant to retain the petitioner. The latter replied by producing a pardon from the governor. The issue was raised that the pardon had been obtained by fraud. The court said:

"When, by suggestion of fraud in its procurement, the question of its validity is put in issue, or where the identity of the person pardoned, or the fact of its acceptance or delivery, are brought before the court, in such case, if upon habeas corpus, it is the duty of the court to hear the testimony and pass upon the merits of the particular case, or, if pleaded upon the trial, then to hear evidence, and let the jury pass upon the case under

the proof. For, while we hold the constitutional power exists in the executive to grant pardons, we also hold that fraud in their procurement will render them void. * * * We need not multiply cases, as enough has been quoted to show the fact that fraud will render the pardon void. We find no settled rule of practice or law laid down, nor do we intend to lay down more than the recognition of the general rule stated. As to what would or would not amount to fraud, or sufficient fraud to render it void, we deduce from the general rules of decisions that misrepresentation of the facts material in the case upon which the governor acted, and which ought to have prevented the clemency of the governor, if known, or any concealment of the material facts of the case, or suggestion of false views to the governor to procure the pardon, ought to be adjudged in the particular case by the court or jury, as the issue may be joined.''

In *State v. McIntire*, 46 N. C. 1, the defendants were convicted and sentenced. On appeal, the case was reversed. In the interval, a pardon was obtained. After reversal, the pardon was interposed as a defense to further proceedings in the case. It was held that the pardon, obtained by misinformation to the governor, was void, and could not be interposed to stay the processes of the court. The court said:

''The fact that the law declares a pardon obtained under such circumstances to be void, is one among the many instances showing the truth of the maxim, 'The common law is the perfection of reason.' ''

In *Rosson v. State*, 23 Tex. App. 287 (4 S. W. 897), the action arose on habeas corpus. Petitioner had been convicted and sentenced to imprisonment, and had been pardoned by the governor. He brought suit in habeas corpus. It was alleged that the pardon was obtained by fraud. The court said:

''But it is further contended by the assistant .attorney-general that the pardon is invalid and void, because it was obtained by fraud, or granted by mistake, and that the record shows that such is the case. It is unquestionably true that a pardon procured by a fraud upon the pardoning power is void. Any suppression of truth or suggestion of falsehood in obtaining a pardon will vitiate it. * * * It being proved, and not con-

troverted, that the pardon had been issued on misinformation, it was *prima facie* procured by fraud, and was void."

In *State v. Leak,* 5 Ind. 359, suit was brought on a recognizance. It was pleaded that the governor had remitted the penalty thereof, and issue was joined that this remittance was obtained by fraud. The court said:

"It is well settled in the British courts that fraud vitiates a pardon or remission, and so it is in the American. But how this fraud must appear is, perhaps, not so clearly determined. It is insisted that it cannot be pleaded, and established by extrinsic evidence,—that is, evidence not furnished by the record of the suit in which the pardon or remission is granted. This point we shall not examine, in deciding the case before us. The authorities and textbooks all concur in this: that whenever it may reasonably be inferred from the contents of the pardon or remission itself, considered in connection with the record of the cause in which it was granted, that the executive was deceived or imposed upon by false statements, or an omission to state relevant facts, on the part of those procuring the pardon or remission, the one or the other, as the case may be, is void. 4 Black. Comm. 400. Coke, in his 3d Inst., 238, says, 'And that party which informeth not the king truly is not worthy of his grace and forgiveness, and therefore either *suppressio veri* or *expressio falsi* doth avoid the pardon.' "

In *Commonwealth v. Halloway,* supra, the action arose on habeas corpus. It was alleged that the pardon under which the petitioner claimed his right to release had been obtained by false and forged representations and papers presented to the pardoning power. The court said:

"We think, also, that this pardon is void because of the false and forged representations and papers that were used in procuring it from the governor. * * * By the common law, all charters and patents may be avoided if based on any false suggestion, whether the suggestions be contained in them or not. This question, however, can be raised only at the instance of the attorney-general, as the law officer of the executive; for it would be quite indecent that any other person should raise it, unless under some carefully prepared statutory regulation. Such a question may be raised by a *scire facias* to repeal the charter;

but it may also be raised on habeas corpus issued to allow the prisoner to plead his pardon; for the commonwealth is a party to that proceeding, and the attorney-general may appear and answer the plea, by showing the false suggestions on which the pardon was obtained. * * * Any person may reclaim the rights out of which he has been cheated, until they come into the hands of a third person who is a bona-fide purchaser for value, without notice of the fraud. And so may the commonwealth. * * * He has no better title to this pardon than a consignee of goods would have, after the goods had been stopped *in transitu*, on the discovery that the sale and delivery had been procured by letters forged by the friends of the consignee.''

In *Territory v. Richardson*, 9 Okla. 579 (60 Pac. 244), the court said :-

''It has been held, concerning pardons, that they stand upon the same plane with the government's patent for land, with its patent for an invention, or with its incorporation of a company, or with the record of a judgment; that, while fraud may vitiate them, and an action may be brought setting either the deed, patent, incorporation, or judgment aside for fraud, it will only be done in a direct proceeding for that purpose.''

One case, *Knapp v. Thomas*, 39 O. St. 377, 392, an action in habeas corpus, seems to deny to the courts the power to question in such a proceeding the validity of a pardon, even though obtained by fraud.

Bishop, in his work on Criminal Law (8th Ed.), Section 905, says:

''A pardon obtained by a fraud on the pardoning power is void. In an Ohio habeas corpus case, this proposition was, by the majority of a divided court, denied, as applied to a pardon fully delivered and accepted, and on a proceeding not for its revocation. A pardon being an act specially *in pais*, the procuring of it being altogether *ex parte*, and there being no provision of law for its reversal, or for any hearing of persons whose interests may be prejudiced by it, this Ohio doctrine is most unfortunate, and is contrary to the ordinary course of our jurisprudence in analogous things.''

In the instant case, the validity of the pardon has been tested by a direct proceeding in equity to set it aside on the

ground of fraud. A court of equity has the inherent and undoubted power by direct proceedings to inquire into the validity of *any* written instrument under which rights are sought to be enforced. It is a basic and fundamental principle of our law that fraud in its procurement vitiates any written instrument in the hands of him who is guilty of the fraud. There is no good reason why the same rules do not apply to a written instrument obtained by fraud upon the governor as to one obtained by fraud upon a private citizen. The governor has power to issue patents to certain state lands. Code Section 76. Suppose the patentee in such a written instrument obtains the same from the governor by fraud and false representations. Will it be said that a court of equity could not decree that patent to be void because of the fraud in procuring it, in a direct proceeding to declare it invalid? Nor does it make any difference whether the act was ministerial or discretionary. If the instrument was obtained by fraud upon the governor, it is invalid and void, and no rights can be enforced under it.

The district court of Ida County, sitting in equity, had jurisdiction of the subject-matter and of the parties, and had full power in that direct proceeding to decree this written instrument to be invalid, because of the fraud perpetrated by this appellee upon the governor in procuring its execution and delivery; and its decree is final.

II. Furthermore, the decree of the district court of Ida County is binding in this case, even if it were erroneous. It was not void for want of jurisdiction. Courts of equity have power to inquire into the validity of all written instruments. That is exactly what the court was asked to do. The appellee submitted to the jurisdiction of the court. He joined issue; he went to trial. A decree was duly entered, from which no appeal was taken. A decree of court may be collaterally attacked, if absolutely void, but it may not be so attacked if merely voidable or erroneous. These propositions are fundamental. The district court of Linn County, or a judge thereof, cannot, in a habeas corpus proceeding, review collaterally the decree of the district court of Ida County, in a matter in which that court had jurisdiction of the subject-matter and the parties, and which decree,

3. JUDGMENT: conclusiveness: cancellation of executive pardon.

even if erroneous, is not void. On this ground alone the writ should have been denied.

The decree of the district court of Ida County in the equity case is a verity, and even if erroneous, cannot now be impeached in this proceeding.

III. In any event, the appellee is in no position to now claim or assert any rights under this written instrument. He no longer has possession of it, and he has absolutely abandoned and surrendered any rights he may ever have had under it, assuming that he had such. He came before the court in Ida County and sur-° rendered the pardon for the express purpose of having the same canceled and annulled. He stated at that time that the cancellation was satisfactory to him, and that he fully understood that he was surrendering the pardon for cancellation, and that he lost and surrendered all rights under it. How can he now reassert the validity of the instrument, upon this record? He surrendered the instrument in open court, for the purpose of having it canceled. It was marked ''canceled'' across its face at the time. Thereafter, it was *prima facie* a void instrument. On its face it appeared to be void. It was in the possession of a third party, the clerk of the district court of Ida County. The appellee either surrendered it voluntarily or in pursuance of a valid decree of court, and in either event, his rights under it, if he ever had any, ceased and determined. The governor undoubtedly had the power to issue to him a new pardon; but this instrument, by appellee's own act, freely and voluntarily done, has been canceled and annulled. A court cannot now breathe into it the breath of life. Appellee, in any event, has no rights now which he can assert under said instrument. Upon this ground alone, if for no other reason, the writ should have been refused.

4. PARDONS:
surrender:
estoppel.

IV. Again, the appellee's case has been fully and finally adjudicated in the habeas corpus proceeding in Ida County. There was a valid judgment of conviction against the appellee. He was arrested and held in custody under a writ of commitment issued on said judgment. He applied for a writ of habeas corpus, setting up that he could not be held on a writ under said judgment

5. HABEAS CORPUS:
judgment: con-
clusiveness.

because the judgment had been nullified by the pardon of the governor. The issue was squarely joined as to whether or not said pardon was valid and did supersede the judgment. The court had full jurisdiction to hear and determine that question in that proceeding. The cases so hold. The appellee instituted that action. He invoked the jurisdiction of the court to relieve him from the effect of its own judgment against him. He prayed the court to stay the hand of its officer, to recall its own writ, to nullify its own judgment. Why? Solely because he presented before the court an alleged pardon from the governor. In such a proceeding, the court can inquire into the validity of the written instrument that is presented to annul its judgment and supersede its writ. With the issue tendered, as it was, the court had the power to inquire into the validity of the instrument that would overturn its judgment. Appellee contends, in effect, that all the court could do would be to examine the document, ascertain if it bore the signature of the governor and the great seal of the state of Iowa, and then close its eyes to the claim and proof that it had been obtained by fraud upon the executive. To claim rights against a judgment by virtue of such an instrument, so obtained, is nothing more nor less than a fraud upon the court itself. A court can protect its own judgments by an inquiry into the question as to whether or not the instrument that vacates them is itself valid. When this appellee petitioned the district court of Ida County to vacate its judgment and set aside its writ and discharge the appellee because of the pardon which he pleaded, with the issue of fraud tendered, that court had the power to inquire into and determine the validity of the instrument before it. In any event, this was done. The writ of habeas corpus was denied for the identical reason now urged: namely, that the alleged pardon was invalid. No appeal was taken from that judgment. The identical question is now presented by another petition in habeas corpus before another judge. There is no change in the issue whatsoever. Courts have held that the writ of habeas corpus is "the darling of the English law," and that a party may present his petition for this writ as many times and before as many judges as he may see fit. Regardless of what may be the rule of the common law, our statute has expressly modified it in this

respect. Our Code, Section 4101, Paragraph 5, expressly provides for an appeal from "an order or judgment on habeas corpus." The Code also provides, Section 4417, Paragraph 4, that the petition for habeas corpus must state "that the legality of the imprisonment has not already been adjudged upon a prior proceeding of the same character, to the best knowledge and belief of the applicant."

This section is not meaningless. If the legality of the imprisonment *has* "already been adjudged upon a prior proceeding of the same character," it is conclusive of the proceeding. A party cannot fail to take an appeal from an adverse decision in a habeas corpus case, as expressly provided by our statute, and, with a petition falsely reciting that the legality of his imprisonment has not been adjudged by a prior proceeding of the same character, become a mendicant, wandering from court to court and judge to judge, over the state, until, perchance, he may obtain a favorable decision. An order or judgment in a habeas corpus case, under our statute, is *res adjudicata* when the identical question, with *no* change of status, is again presented to the same or another tribunal. Such is and such should be the law. Appellee's petition should have been dismissed on this ground.

For the reasons set forth, the order granting the writ of habeas corpus is—*Reversed.*

EVANS, PRESTON, and DE GRAFF, JJ., concur.

STEVENS, C. J.—I concur in the foregoing opinion, except that I do not think a court of equity has jurisdiction to set aside a pardon.

WEAVER, J. (dissenting.) The above entitled case having been originally assigned to me to write, I prepared an opinion affirming the ruling of the trial court. On consultation by the full bench, the majority has ruled otherwise, and orders a reversal. Profoundly convinced that this result is without substantial justification in the law, I cannot concur therein; and as the opinion I had prepared states the grounds of my conclusion and discusses the several propositions of law on which I rely, as fully and as clearly as I could hope to do in rewriting the case, I embody it herein in full, in support of my dissent.

In so doing, I restate the case and its salient points, because, without in the slightest degree impugning the judicial fairness of the majority, I think its discussion of the case tends to minimize or ignore some of its material features and over-emphasize some which are immaterial. The opinion to which I have referred, and which I have adopted as setting forth the grounds of my dissent, is as follows:

In the district court of Ida County, Iowa, the petitioner herein was indicted, tried, and convicted of the crime of rape, and thereafter, on November 26, 1917, judgment was entered by said court upon the verdict of the jury, and the accused was sentenced to imprisonment for life in the state reformatory, at Anamosa, of which the appellant herein is warden. Plaintiff inaugurated an appeal to this court from said judgment, but later dismissed it, without a hearing thereof. About the time of such dismissal of his appeal, acting by his attorney or agent, he made application to Hon. W. L. Harding, then governor of Iowa, for a pardon. On November 16, 1918, the petition for clemency was granted by said governor, who issued and delivered to or for said petitioner a full and unconditional pardon for the said crime of rape, restoring him to all the rights, privileges, and immunities which had been forfeited by reason of said conviction.

At the February term, 1919, of said district court, a petition entitled "Petition in Equity—The State of Iowa, by Charles Macomber, County Attorney of Ida County, Plaintiff, v. Ernest Rathbun, Defendant," was filed, reciting the conviction of said Rathbun of the crime of rape, as hereinbefore stated, and the judgment entered upon said conviction, sentencing him to life imprisonment, and the dismissal of his appeal therefrom. Said petition further alleges that said pardon was in fact executed, and was delivered to and accepted by said Rathbun. Having set forth these conceded facts, the petition proceeds to allege that said "pardon is a nullity, and of no force or effect," because the governor had no authority vested in him to grant said pardon: First, because, at the date of said application, the appeal from said judgment had not yet been dismissed; second, because the pardon was obtained by fraud, by suppression of the truth, by suggestion of falsehood, and by misrepresentation of the evidence given upon the trial in the district court,

and that these and other means misled, deceived, and imposed upon the governor, and thus induced the granting of the pardon. By an amendment to said petition, it was alleged that said pardon was improperly granted because the governor did not submit the application to the investigation of the board of parole, as required by law, and granted the same without the aid, assistance, or advice of said board. After said petition was filed, Hon. H. M. Havner, then the attorney-general of the state, was permitted to intervene and join as a plaintiff in the proceeding. For the reasons stated in said petition and amendments, a decree was prayed that said pardon be canceled and held for naught. After hearing the evidence offered the trial court entered a decree that the pardon issued by the governor, as hereinbefore stated, is "null and void and of no effect, and never has been in force or effect," and that the judgment theretofore entered, sentencing said Rathbun to life imprisonment, "is in full force and virtue, and the sentence for life imposed under and by virtue of said conviction is of full force and virtue."

"The court further finds that all of the allegations of the plaintiff's petition are true, with reference to the fraud and deceit of Ernest Rathbun. It is therefore ordered, adjudged, and decreed that the said pardon be and the same is hereby canceled and held for naught, and the copy held by the defendant shall be surrendered to the clerk of the district court of Iowa, in and for Ida County, and the same shall be marked 'canceled' by said clerk, and the pardon now on file with the clerk of the district court of Ida County shall be marked 'canceled' by him."

No exception was preserved to said decree, and no appeal was taken therefrom. The proceeding resulting in this decree was not begun or prosecuted at the instance or request of the governor, who has not at any time attempted to recall or revoke the pardon issued by him. At the same term of court, Rathbun, being in custody under the mittimus issued for his imprisonment, acting, as we assume, on the theory that the decree was void, sued out a writ of habeas corpus, alleging the illegality of his detention by the sheriff, and pleading the benefit of his pardon. Habeas corpus having been issued and hearing had thereon, Hon. E. G. Albert, judge of said court, dismissed the

proceeding and remanded the prisoner to the custody of the sheriff by virtue of said mittimus, on the ground that "said pardon is absolutely void, for the reason that the same was granted by the governor of the state of Iowa without application therefor or correspondence in connection therewith having been submitted or passed on by the board of parole, and no recommendation made by the board of parole to the governor in connection therewith." Thereafter, the mittimus was executed by delivering the prisoner to the reformatory, at Anamosa, and turning him over to the warden thereof, by whom he has since been restrained of his liberty.

On January 18, 1921, Rathbun, by his present counsel, presented to Hon. F. F. Dawley, Judge of the Eighteenth Judicial District of Iowa, a petition for a writ of habeas corpus, to test the legality of his restraint by said warden. The petition sets out, in substance, the history of the case as hereinbefore recited, pleads the pardon issued to him, and denies the jurisdiction and authority of the trial court to set aside or cancel such pardon. The warden alleges the validity of the petitioner's imprisonment and the decree canceling the pardon. To so much of the warden's answer as pleads the invalidity of the pardon and its cancellation by the decree of the district court, the petitioner demurred, the ground thereof, briefly stated, being that the district court was wholly without jurisdiction to entertain such a proceeding or to enter such decree. The trial judge sustained the position of the petitioner that the decree purporting to cancel the pardon is void for want of jurisdiction in the district court to entertain such a proceeding, and ordered his release from imprisonment under the conviction and sentence passed upon him for the crime of rape. From this ruling and order, the defendant appeals. It should here, perhaps, be said that the petitioner was also convicted upon another indictment, charging him with the crime of perjury, and sentenced to imprisonment for ten years on account of such offense, and that, upon his discharge under the writ of habeas corpus from imprisonment for rape, he was remanded to the custody of the warden, to serve the remainder of his term of imprisonment for perjury.

I. The vital inquiry upon this appeal is the question

whether the district court of Ida County had authority or juris-
diction to adjudge the pardon void. If that court had no juris-
diction of the subject-matter, its decree purporting to cancel
the pardon was void, and constitutes no adjudication against
the petitioner's right to the benefit of the executive clemency.
The question so presented calls for some investigation into the
nature and effect of a pardon by constituted authority. By the
Constitution of the United States, the president is made the
repository of executive power, and given unlimited authority to
grant pardons for all offenses against the United States, except
in cases of impeachment; and this is held to include all such
offenses before as well as after conviction. In practically every
state Constitution, a power of pardon is vested in the governor
of the state; though in most states, as in Iowa, the power is
limited to the granting of pardons after conviction. Constitu-
tion of Iowa, Article 4, Section 16. Authority to pardon after
conviction is generally interpreted as meaning at any time after
a verdict of guilty has been returned by a trial jury, even though
judgment be not entered, or an appeal be pending. *State v.
Alexander*, 76 N. C. 231; *Commonwealth v. Lockwood*, 109 Mass.
323. Under our republican system, government is vested in
three departments: legislative, executive, and judicial. By our
own Constitution, Article 3, Section 1, after a recognition of
this fundamental feature, it is expressly provided that "no per-
son charged with the exercise of powers properly belonging to
one of these departments shall exercise any function appertain-
ing to either of the others, except in cases hereinafter expressly
directed or permitted." By the same instrument, the "supreme
executive power" is vested in the governor, and the judicial
power is vested in the courts. By the express terms of the Con-
stitution, as we have seen, the power of pardon is vested in the
executive department. It is not derived from or by any act on
the part of the legislative department, nor can it be impaired
or destroyed by any interference by the judicial department. It
comes directly to the executive by gift or endowment from the
sovereign people, the expression of which is embodied in the
Constitution itself. In the language of the Supreme Court of
the United States, in *Kendall v. United States*, 12 Pet. (U. S.)

364, 426, speaking of the authority of the executive within his department, it is said that:

"*So far as his powers are derived from the Constitution, he is beyond the reach of any other department, except in the mode provided by the Constitution through the impeaching power.*"

An official act by the executive department which involves the exercise of discretion or judgment will not be reviewed or controlled by the courts. *Noble v. Union River Log. R. Co.,* 147 United States 165; *Decatur v. Paulding,* 14 Pet. (U. S.) *497; *New Orleans v. Paine,* 147 U. S. 261; *Bates v. Taylor,* 87 Tenn. 319; *Fleming v. Guthrie,* 3 L. R. A. 53.

In *State v. Forkner,* 94 Iowa 1, 18, this court said:

"The power to pardon * * * is *undoubtedly a prerogative of the executive.*"

A prerogative is "a right to exercise a power or privilege in priority to, or to the exclusion of, others; a right attached to an office or rank to exercise a special privilege or function; an official and hereditary right which may be asserted without question, and for the exercise of which there is no responsibility or accountability, except to the sovereign power, as to the fact and the manner of its exercise." Webster's Dictionary.

"It means an exclusive or peculiar privilege; prior and indefeasible right; fundamental and essential possession; used generally of an official or hereditary right which may be asserted without question, and for the exercise of which there is no responsibility or accountability as to the fact and the manner of its exercise." 22 Am. & Eng. Encyc. of Law (2d Ed.) 1178.

In the mother country, the prerogative of pardon was hereditary in the reigning sovereign; but in our form of government, it is usually attached by constitutional provision to the chief executive, in whom it is "hereditary" in the sense that it passes to and vests in the successive occupants of that office. It is of like constitutional quality and exclusiveness with the other prerogative powers committed to the executive hands: as, for example, the right to be commander in chief of the militia, army, and navy of the state (Constitution of Iowa, Article 4, Section 7); the right to transact all executive business with the officers of the government (Section 8); the right to fill by ap-

pointment vacancies occurring in state offices (Section 10) ; the right to summon the legislature to meet in special session (Section 11) ; the right to adjourn the general assembly when the two houses fail to agree (Section 13) ; and the right to approve or to veto bills passed by the legislature (Article 3, Section 16). All these powers, except the last one enumerated, are in the same section with the grant of the power to pardon. With not one of these prerogatives has either the legislature or the judicial department any right or power to interfere or control. The executive may prove wanting in ability to properly exercise these great powers; he may prove unworthy of the high honor bestowed upon him, or may be swayed by evil motive or corrupt consideration in the discharge of these duties: yet the validity of his official acts, within the scope of his constitutional powers, cannot be questioned by legislature or court. True, he may subject himself to impeachment and removal from office; but no action at law or in equity will lie to set aside or avoid or undo anything he may have done in the discharge of the constitutional functions of his official position. For illustration, let us suppose that it were susceptible of proof that a governor had been influenced by a bribe to approve a vicious piece of legislation, or to call an extra session of the legislature, or to appoint a given person to a vacancy in a state office,—no lawyer would say that the state or the attorney-general or a county attorney or a private citizen could maintain action to annul the legislation so corruptly enacted, or to cancel the summons to the general assembly, or to set aside the appointment to the vacancy. And if a grossly corrupt official act cannot be so remedied, it follows, for a still stronger reason, that such an act cannot be judicially set aside on the plea that the governor was deceived or misled thereto by mistake or by false information. The governor is, of course, not immune against criminal prosecution or impeachment, if the facts justify it; but his acts done within the scope of his prerogative powers stand secure against attack or question by the courts; nor can they be avoided by judicial inquiry into the motives which prompted them. To repeat the language already quoted from the United States Supreme Court in the *Kendall* case, supra: So far as the powers of the executive are defined in the Constitution, "*he is beyond the reach of any other*

*department, except in the mode presented by the Constitution
through the impeaching power.''*

In our own Constitution, as we have seen, the three co-
ordinate and independent departments of the government are
expressly provided for, and the attempt by either department
to exercise powers properly belonging to either of the others is
expressly forbidden. The constitutional powers vested in the
executive are not left to inference. A specific enumeration of
most of them is found in the 22 sections of Article 4 of that
instrument, and among them is the power to grant pardons.
The immunity of executive acts from judicial review or control
extends to each and every one of these constitutional preroga-
tive powers,—to the power of pardon no less than to the power
to appoint a judge to fill a vacancy in the membership of this
court or of the district court. Speaking of this power, Mr. Jus-
tice Field, of the Federal Supreme Court, says:

''The power thus conferred is unlimited, with the excep-
tion stated. It extends to every offense known to the law. * * *
This power of the president is not subject to legislative control.
Congress can neither limit the effect of his pardon nor exclude
from its exercise any class of offenders. * * * It is not within
the constitutional power of Congress thus to inflict punishment
beyond the reach of executive clemency.'' *Ex parte Garland*,
71 U. S. 333, 380 (18 L. Ed. 366, 370).

The same court has further said that:

''The legislature cannot change the effect of a pardon any
more than the executive can change a law.'' *United States v.
Klein*, 80 U. S. 128 (20 L. Ed. 519).

Says the Ohio court:

''Any attempt of the courts to interfere with the governor
in the exercise of the pardoning power would be manifest usur-
pation of authority. The nature of our government forbids it.
The long contest as to the rightful authority of government is
in some respects ended. In our national and state Constitu-
tions, the powers of the three branches of government, the legis-
lative, the executive, and the judicial, are clearly defined and
limited, and the important truth is at length understood, that
each can best preserve the jurisdiction and power confided to it
by carefully abstaining from all interference with the rightful

authority of the others." *Knapp v. Thomas,* 39 O. St. 377, at 391.

On the general subject of the independence of the several departments of government, Judge Cooley has said:

"Our government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the Constitution, are of equal dignity, and, within their respective spheres of action, equally independent. * * * This division is accepted as a necessity in all free governments, and *the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others.* The executive is forbidden to exercise judicial power by the same implication which forbids the courts to take upon themselves his duties." *Sutherland v. Governor,* 29 Mich. 320, 324.

The same distinguished author has further said:

"Where complete power to pardon is conferred upon the executive, it may be doubted if the legislature can impose restrictions, under the name of rules or regulations. * * * The executive, in the proper discharge of his duties, under the Constitution, is as independent of the courts as he is of the legislature." Cooley on Constitutional Limitations (5th Ed.) 138.

And again, the same court, construing a constitutional provision substantially the same as ours, says:

"The Constitution in express terms lodges the pardoning power with the governor, and with it the co-ordinate branches have nothing to do, except as the legislature may provide by law how applications may be made, and is entitled to a report of such action." *Rich v. Chamberlain,* 104 Mich. 436 (62 N. W. 584).

Chief Justice Marshall defines a pardon as "an act of grace *proceeding from the power intrusted with the execution of the laws."* *United States v. Wilson,* 7 Pet. (U. S.) 150.

To these quotations we may further add the following from the Missouri court:

"All the departments of our government are confined in their operations. They have prescribed limits, which they cannot transcend. * * * Although questions have sometimes arisen whether a power properly belonged to one department of

government of another, yet there is no contrariety of opinion as
to the department of the government to which the power of
pardoning offenses appertains.   All unite in pronouncing it an
executive function. * * * The justice or propriety of the act of
pardon has nothing to do with the question of its constitu-
tionality.''

And speaking of the governor's authority in such cases, the
court there further says:

''He is the sole judge of the propriety of granting a par-
don.''   *State v. Sloss,* 25 Mo. 291.

Directly in point is the holding of the Wisconsin court as
to the independence of the executive in the exercise of his con-
stitutional powers.   It says:

''The policy of our Constitution and laws has assigned to
the different departments of the state government distinct and
different duties, in the performance of which it is intended that
they shall be entirely independent of each other; so that what-
ever power or duty is expressly given to or imposed upon the
executive department is altogether free from the interference
of the other branches of the government.   Especially is this the
case where the subject is committed to the *discretion* of the chief
executive officer, either by the Constitution or by the laws.   So
long as the power is vested in him, it is to be by him exercised,
and no other branch of the government can control its exercise.
But it would be alike unbecoming and unwarranted on our part
to inquire into the motives of the governor in the exercise of a
discretion given to him alone, in any case.   *He is responsible for
his acts in such case, not to the courts, but to the people.''   At-
torney General v. Brown,* 1 Wis. 442.

There is no pertinent authority or precedent for holding
that a full and unconditional pardon, executed in due form by
the governor and delivered to and accepted by the convicted
prisoner, may be attacked and set aside in a judicial proceeding
on complaint of a private citizen or public prosecutor.   It is,
of course, well settled that the executive may grant a pardon
subject to such conditions as he may see fit to attach thereto
and make a part of the instrument or order which sets the pris-
oner at liberty; and it is equally well settled that violation of or
neglect to perform such conditions by the beneficiary works a

forfeiture of such pardon, and he may be reimprisoned, to serve out the term of his sentence. *Arthur v. Craig*, 48 Iowa 264, 267; *State v. Hunter*, 124 Iowa 569. Nearly all of the many cases in which courts have been called upon to consider the matter of executive pardons have been of this character, where the question has been upon the validity and effect of the conditions.

The English cases in which the authority of courts to annul a pardon is considered are, as a rule, those arising under an act of Parliament, 27th Edward III, a statute which has never been recognized as a part of the common law of this country. Moreover, the case here presented is in no manner controlled by common-law rules, as might possibly be the case if the authority to pardon were of common-law origin. But such authority exists in the United States and in this state by virtue of our written Constitution, framed and adopted as the expression of the sovereign will of the people. The English government differs fundamentally from our own. It has no trinity of equal coordinate departments, and a practice or precedent may there be recognized which would be wholly foreign to the genius of our own institutions. The power of pardon, as known in this country, is the creature of the Constitution, and to that instrument alone do we look for its limits and for authority for its exercise. This is an important distinction which has sometimes been overlooked, and is manifestly overlooked when courts or text-writers cite English cases as authority for the proposition that the courts may invade the province of the executive and set aside a pardon granted by him. This situation has had comparatively recent attention in a very elaborate opinion by the Texas court, where, conceding the general propriety of consulting English precedents in so far as they are applicable to our conditions and not inconsistent with our theory and form of government, it is said:

"But when inconsistent with our system, they have no application. In England, the king was sovereign, and in him all power was supposed to rest; and the history of that country for many years—yea, centuries—teaches that a constant war was waged to wrench from him certain power, by grant of charters and by acts of parliament guaranteeing to the people certain liberties and certain rights. The power possessed by the courts flowed from the king. * * * There were no three separate

and distinct agencies of government, wholly independent of each other, with their powers and duties defined by the written law of the land, as with us. English liberties were the growth of ages, while ours sprung into full bloom with the close of the Revolution and the adoption of our Constitution." *Snodgrass v. State,* 67 Tex. Cr. Rep. 615 (162 S. W. 162).

See, also, *Diehl v. Rodgers,* 169 Pa. 316 (32 Atl. 424), where it is said that the king's prerogative of pardon is subject to change or modification by act of parliament; while, under 'the American Constitution, it is independent of legislative control.

The Constitution speaks for itself, and the powers thereby committed to any department of the government are not to be limited or construed away by reference to precedents having their origin under another and fundamentally different system of government. In all the precedents cited to our attention by counsel, there is not one in which any court, Federal or state, has ever entertained an action in equity or at law to set aside or annul an unconditional pardon, duly executed by the pardoning power and delivered to and accepted by the beneficiary. There are a few instances in habeas corpus proceedings where the effect or validity of a pardon has been contested on the ground of fraud in its procurement; but even in this class of cases, where the pardon has been adjudged void it has been because of some fraud or defect apparent on the face of the pardon itself, or because the instrument was never delivered. Such was the case in *Commonwealth v. Halloway,* 44 Pa. St. 210 (84 Am. Dec. 431); *State v. McIntire,* 46 N. C. 1 (59 Am. Dec. 566); and *State v. Leak,* 5 Ind. 359. It is true that, in certain habeas corpus cases where the courts have refused to question the validity of a pardon collaterally, it has been suggested by way of dictum that, if such question were to be raised, it should be by direct attack. *Territory v. Richardson,* 9 Okla. 579 (60 Pac. 244). It is quite universally held that the governor himself, having issued an unconditional pardon, fair and regular upon its face, and having delivered it, cannot thereafter revoke or recall it because he later becomes convinced that he acted unadvisedly. *Knapp v. Thomas,* 39 Ohio St. 377; *Ex parte Reno,* 66 Mo. 266; *Ex parte Williams,* 149 N. C. 436; *Ex parte Powell,* 73 Ala. 517; *In re Biegle,* 7 Ohio N. P. 561; *State v. Nichols,* 26

Ark. 74. Nor is the validity of a pardon affected because the governor granted it without the advice or consent of a board of parole. *People v. Marsh,* 125 Mich. 410 (51 L. R. A. 461); *In re Edymoin,* 8 How. Pr. (N. Y.) 478. As is repeatedly held in the cases already cited, the motive or intent which may have moved the governor to grant and deliver an unconditional pardon is not open to judicial inquiry. If we may except the somewhat intemperate discussion indulged in by the Oklahoma court in *Henry v. State,* 10 Okla. Cr. 369 (136 Pac. 982), provoked by an existing bitter controversy between that tribunal and the governor of the state, there will not be found in the whole range of the case law of the land a single instance in which the judicial department of the government has assumed to inquire into or denounce the acts of a governor in the exercise of such an executive function. The universally accepted rule is well and forcibly expressed in 20 Ruling Case Law 533, as follows:

"An executive may grant a pardon for good reasons or bad, or for any reason at all, and his act is final and irrevocable. Even for the grossest abuse of this discretionary power the law affords no remedy; with the reasons which actuated the executive, the courts have no concern. The Constitution clothes him with power to grant pardons, and this power is beyond the control, or even the legitimate criticism, of the judiciary. Whatever may have been the reasons for granting the pardon, the courts cannot decline to give it effect, if it be valid upon its face."

This statement of the law is well supported by the authorities already cited, and is fully justified by many other precedents, among which we may enumerate *Ex parte Hunt,* 10 Ark. 284, where it is said:

"What the facts were upon which the executive acted in this case, we have no means of knowing, nor is it our province, in the slightest degree, to scrutinize them or question their correctness."

In *Flavell's Case,* 8 Watts & S. (Pa.) 197, it was said that the court was bound to accept the executive action as controlling and conclusive. In *In re Moore,* 4 Wyo. 98 (31 Pac. 980), it was held that the sole inquiry by the court was merely as to the jurisdiction of the governor, and that it could not inquire

whether the pardoning power had been exercised judiciously. In *Ex parte Crump,* 10 Okla. Cr. 133 (135 Pac. 428), the court declares that "an abuse of the pardoning power does not authorize the courts to decline to give effect to a pardon," and that "no court has the power to review the action of the executive in granting a pardon." In *Martin v. State,* 21 Tex. App. 1 (17 S. W. 430), the court said:

"With the reasons which actuated the executive to grant the pardon the courts have no concern."

In *Ex parte Hawkins,* 10 Okla. Cr. 396 (136 Pac. 991), the Oklahoma court again states the rule to be that the "courts have no right to substitute their discretion for the discretion of the governor or the acting governor, or to nullify any of his official acts," except in case of usurpation of power not granted him. In the *Greathouse* case, 2 Abb. (U. S.) 382, it is said that, in construing a pardon, either public or private, the court must "dismiss all knowledge of the intentions of the pardoning power, except such as is to be derived from the terms of the act of grace itself." As bearing in the same direction, see *State v. Ward & Briggs,* 9 Heisk. (Tenn.) 100; *Locklin v. State* (Tex. Cr. App.), 75 S. W. 305; *Opinion of Justices,* 120 Mass. 600; 14 Law Notes 65; 20 Yale L. J. 131. To hold otherwise is to disregard a fundamental principle of our government.

II.   If we understand the position of counsel for the appellant, they seek to avail themselves of the "decree" of the district court purporting to cancel and annul the pardon, as a prior adjudication of the issue we have been discussing. To give it the effect of an adjudication, the court pronouncing the decree must have had jurisdiction of the subject-matter, as well as of the person of the prisoner. It is to be admitted that the warden had custody of the prisoner and, we presume, produced him before the court; but if the court had no jurisdiction of the subject-matter, the decree binds no one. Jurisdiction, as the word is used in this connection, is the power vested in the court by the Constitution or by statute to take cognizance of the subject-matter of a litigation and of the parties brought before it, and to hear, try, and determine the issues of law and of fact and render judgment thereon.

"It is the power to hear and determine the subject-matter in controversy in the suit before the court." *Riggs v. Johnson County*, 6 Wall. (U. S.) 166, 187.

"Jurisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases." Brown on Jurisdiction, Section 1-a.

Ordinarily, jurisdiction of the person may be given by consent or may be waived, but jurisdiction of the subject-matter cannot be given by consent, nor can objection thereto be waived. A judgment or decree entered without jurisdiction of the subject-matter is void, and works no estoppel or adjudication against anyone, and may be impeached collaterally. *Scott v. Babcock*, 3 G. Greene 133, 150; *Melhop & Kingman v. Doane & Co.*, 31 Iowa 397, 400; *Kline v. Kline*, 57 Iowa 386; *Porter v. Welsh*, 117 Iowa 144, 146; *Walters v. Steamboat*, 24 Iowa 192, 199; *Walker v. Kynett*, 32 Iowa 524, 529. Indeed, the rule to this effect may be said to be elementary. Our discussion of the present case in the preceding paragraph of this opinion demonstrates beyond all reasonable question that the courts are without power or jurisdiction to review or control or set aside the action of the executive in the exercise of his prerogative power of pardon, and that the decree by which such power is affirmed or sought to be enforced is a nullity, and does not operate to deprive the petitioner of the benefit of the executive clemency. We are clear that such decree is not available to the appellant as a prior adjudication. The same may be said concerning the former hearing and order of remand upon habeas corpus before Hon. E. G. Albert, judge of the district court: not that said judge exceeded his jurisdiction, or that his order of remand was void for want of authority in the premises to make it, but that it is the well settled rule that the doctrine of *res adjudicata* is not applicable to orders of remand in habeas corpus proceedings. *Rogers v. Superior Court*, 145 Cal. 88 (78 Pac. 344); *People v. Brady*, 56 N. Y. 182; *Weir v. Marley*, 99 Mo. 484; *In re Snell*, 31 Minn. 110 (16 N. W. 692); *In re Blair*, 4 Wis. 521, 532; 15 Am. & Eng. Encyc. of Law (2d Ed.) 211; *Ex parte Kaine*, 3 Blatch. (U. S.) 1; 9 Encyc. Pl. & Pr. 1070; Brown on Jurisdiction, Section 111; Hawes on Jurisdiction, Section 181.

III.   It will be observed that, in the discussion of this ap-

peal, no question of the possible innocence of the petitioner of the crime of which he was convicted has been raised. For the purposes of this case, he is presumed to have been guilty, and to have been duly and properly convicted. Indeed, his acceptance of the pardon and his pleading thereof in this proceeding are, in legal effect, an admission of guilt. His pardon is a matter of grace, and not of right, and if valid, it operates as a forgiveness of the crime as an offense against the law of the state, and releases him from the penalties and forfeitures which the law attached to his conviction. The judicial power and authority of the state government have been vigorously and faithfully exercised, to secure his conviction and punishment. Its duty has been done; its jurisdiction has been exercised to its limits. Its judgment is beyond the possibility of reversal. Its mission, so far as it relates to that crime, is ended. Whether the punishment shall be literally inflicted as adjudged, and the convict remain within the prison walls the remainder of his days, is not a judicial question. That responsibility is committed to and placed upon another and independent department of the government. Excepting only in cases of impeachment, every conviction of crime and every sentence pronounced thereon is subject to the possibility of being removed or alleviated by the clemency of the governor. This provision, with some variation, has been embodied in the Constitution of the United States and the Constitution of practically every state in our Union. There are many reasons, which we will not stop to discuss, why the power to pardon after conviction should be recognized and lodged in some department of government. It may be said that the power is a dangerous one, and liable to abuse; and this is true, though perhaps no more so than is any other power of government, all of which must, in ultimate analysis, largely depend on the authority and discretion vested in individual public servants. That the history of our national and state governments discloses very few instances where the power of pardon has been seriously abused, demonstrates that public interests have neither sustained nor are likely to sustain material injury in its practical application. The danger of a governor's being imposed upon by an artful applicant for pardon is, in these times, more imaginary than real. It is to be presumed that a petitioner for pardon and

his friends will marshal all the available mitigating circumstances at their command, and make use of all the arguments and inferences which they think may influence the executive mind to leniency; but it is quite incredible that they can far mislead a person of the presumed capacity and experience of a man holding such a position, by any radical misrepresentation of matters and things which can be verified or disproved by the record of the very case he is asked to consider. This thought is expressed by the court in *State v. Alexander,* 76 N. C. 231, where, after contrasting conditions in England with our own, it is said:

"But under our Constitution and statute, the person charged must be brought before the public in a public trial and face his accusers, and all the facts must appear and the jury find him guilty, and the court must sentence him. If then he will ask for pardon, he cannot deceive the pardoning power. The public are in possession of the facts, and can resist his application."

To like effect is the case of *Whitcomb v. State,* 14 Ohio 234, where the sufficiency of a pardon offered in evidence was challenged on the ground that it had been obtained by fraud, and the court says:

"If the governor was imposed upon by artful and fraudulent representations, it is a question between him and his constituents; but with which the plaintiff had no concern, and to which no objection from him would lie."

The governor in this case was neither a child nor an imbecile. He was himself an experienced and able lawyer, and as such, he knew that in the trial court there was a complete record of all the proceedings, including a full and complete record of all the testimony; and even if we were authorized to go into that question at all, we would be bound to assume that he did not neglect the opportunity to satisfy himself whether the circumstances were such as to justify his action. Neither Constitution nor statute authorizes the court to force upon him an unasked guardianship, nor to insist upon protecting him against an alleged fraud of which he does not complain. The reasons which influence him to a pardon may not be such as would command the approval of the court or the prosecutor or members

of the public at large. It is sufficient that *he* is satisfied there-with. His is the prerogative and his the responsibility.

The theory or argument which admits the independence of the executive authority in exercising the power of pardon, and yet asserts judicial authority on any ground whatever to con-trol or nullify such action or inquire into the reasons or motives which actuate the governor in exercising it, is self-contradictory. The two propositions are wholly incompatible. This self-evident truth is not to be evaded or minimized by reference to the inher-ent power of the court to defeat fraud. That inherent power is not without limit. It cannot transcend or disregard the consti-tutional barriers which separate the functions and powers con-ferred upon the several governmental departments, legislative, executive, and judicial. For example, the enactment of a stat-ute by the legislature may be tainted with gross fraud, bribery, or other corrupt influences; yet the judicial department cannot nullify the act on that ground. The same Constitution which clothes the governor with the power of pardon also confers upon him the power to approve an act of legislation; yet no court would assume to inquire into the reasons influencing him to give his signature to the approval of a bill passed by the lawmaking power. For example, the legislature frequently assumes to legalize the proceedings of a school district or municipal cor-poration or drainage project, thereby validating the levy of taxes or the expenditure of public funds. Now assume that per-sons interested in securing such legislation induce the governor to approve it, by fraud or false statements or by suppression of the truth, and that such approval would not have been given, had he not been deceived or misled; yet no lawyer will advise a client that the validity of the statute can be challenged on that ground. This is so because it is absolutely essential to the pres-ervation of the complete independence of the several constitu-tional departments of government upon which the whole scheme of our republican institutions is made to rest. The prerogatives and independent functions of the several departments are only those which are enumerated in the written Constitution, in ex-press words or by necessary implication. Among those pertain-ing to the executive, as already pointed out, is that of pardon. Its rightful exercise involves no retrial of the prisoner's guilt

or innocence. It is not made contingent upon proof of any question of fact. It is an act of grace, an act of purely executive discretion, and may be granted or denied for any reason, or without the assignment of any reason; and its grant or denial is not subject to the review or control of the judiciary or legislature, any more than is the executive action of the governor in approving or disapproving an act of the legislature, or in making an appointment to fill a vacancy in a state office. A fraud "*upon*" the governor in inducing or persuading him to exercise any of his constitutional prerogatives is no more the subject of judicial cognizance than is the fraud "of" the governor himself. Even in the courts of law and equity, where no question of prerogative is involved, there comes a time when a charge or plea of fraud will not be considered. For example, the court having exercised its proper jurisdiction in the hearing and determination of an issue presented, and having pronounced its decree or judgment thereon, which stands unreversed, it cannot be set aside or annulled on the charge that it was rendered upon false or forged testimony. *Croghan v. Umplebaugh,* 179 Iowa 1187; *Bradbury v. Wells,* 138 Iowa 673, 677; *Kelly v. Cummens,* 143 Iowa 148; *Guth v. Bell,* 153 Iowa 517; *Sullivan v. Herrick,* 161 Iowa 148, 155; *Aschan v. McDermott,* 164 Iowa 750, 759; *Sudbury v. Sudbury,* 179 Iowa 1046. This is so held upon the theory that, the tribunal having jurisdiction of the matter having once heard the evidence and presumably passed upon the sufficiency and veracity of the showing made, in the manner required by law, the judgment entered thereon is a finality, not open to impeachment by proof that the evidence was, in fact, false or mistaken. The principle which forbids such impeachment is even less persuasive than that which makes a pardon, once duly executed, delivered, and accepted, immune against attack by any person or authority representing another and distinct department of government. It being conceded, as indeed it must be, that a pardon is a matter wholly within the uncontrolled discretion of the governor, and that his reasons for exercising the power need not be satisfactory to any other person than himself, it follows of necessity that, when such pardon is produced by the prisoner, the only permissible or possible ground upon which any court or officer can refuse to honor it

is to challenge its genuineness, by showing that it was never executed by the governor, or that it was never delivered by his authority or consent, or that it has never been accepted by the prisoner. In this case, neither ground of challenge is shown or claimed by the appellant. On the contrary, it is shown without dispute that the instrument of pardon is in due form and wholly unconditional, and that it was voluntarily executed by the governor and by him duly delivered to the prisoner, who accepted it; and its validity cannot be affected or destroyed by the judgment or decree of any court.

In all this, there is no just occasion for mourning over the spectacle thus presented of "judicial inefficiency." Only those who forget that the courts are no exception to the rule applicable to other departments of government, in that their powers are hedged about by constitutional restrictions which they cannot legitimately disregard, will be disposed to indulge in any regret on that score. Unlimited power in the judiciary is no more to be desired than in the executive or legislative domain; and when the courts have exercised their powers to the constitutional limits, it becomes them, no less than it becomes every other governmental agency, to yield obedience thereto.

Whether it would be competent for the legislature to enact a statute by which a pardon obtained by fraud may, with the concurrence of the executive, be avoided or set aside, we do not undertake to say; for we have no such statute. It may be said, however, that a statute of that character, providing for some proceeding *in aid of the executive power,* would, perhaps, not be constitutionally objectionable (see *Knapp v. Thomas,* 39 O. St. 377, 392); but it surely cannot be said that, with or without a statute, the court can entertain a proceeding, either at law or in equity, in hostility to the exercise of the pardoning power of the executive.

To the foregoing, I desire only to add that the majority opinion, when reduced to lowest terms, rests upon the assumptions: (1) That the district court of Ida County had jurisdiction in equity to cancel the pardon; and (2) that the case does not present the question of interference by the judiciary with the official functions of the executive. The two propositions are only variant phases of the idea stated in the second. In taking

this for granted, the majority begs the one vital question in the case, and the desired result could as well or better have been announced in an opinion of a single page. If this is to be our position, then why seek to add strength to the conclusions by citing the rule that the decree of a court having jurisdiction of the person and subject-matter may not be questioned collaterally? Who denies it? A citation from the multiplication table would be equally true, and equally without point in this case. The sole question here is whether the court entering the decree *did* have jurisdiction of the subject-matter, and that depends upon the further question whether the case before us "presents the question of interference by the judiciary with the act of the executive." The majority says it does *not,* and thus reaches the end from the beginning by overleaping and ignoring all the barriers which constitutional provisions and the multitudinous decisions of practically every court of this country have furnished for our guidance. Why take an excursion into ancient history to quote Blackstone, who wrote of the law of a kingdom in which the independence of the several departments of government was unknown? Why go beyond and outside of our Constitution, which has confided the pardoning power to the discretion of the executive, and has in so many words provided that no person charged with the exercise of powers properly belonging to one of the departments of government shall exercise any function appertaining to either of the others? Why point to the word "canceled," written upon the pardon by a clerk of the trial court, as if that in itself is entitled to weight upon the vital questions raised by this appeal? Why pile up incidental remarks and dicta of courts in cases in which this constitutional question was neither involved nor decided? And above all other things, why does the majority pass in utter silence the scores of adjudications by the courts of every state having occasion to discuss these matters which deny to the judiciary the right to overstep the constitutional boundary of its own department, to inquire into or annul the exercise by another department of its discretionary powers? This question is not to be avoided by any play upon words, or by refining upon the distinction between fraud *of* or by the governor and fraud *upon* the governor. Camouflage it as we may, whether the alleged

fraud be *by* the governor or *upon* the governor, the inescapable result is, when stated in plain terms, that the judiciary assumes the right to transgress the boundary between the departments, and there, uninvited and unsolicited by the executive, annul, set aside, and hold for naught the official act of such executive in a matter which the Constitution has committed solely and exclusively to his discretion. This is sought to be justified by the argument that, if this right be denied, fraud may go unpunished, because of the conceded rule that a pardon once executed by the governor and delivered cannot be recalled or canceled by him. Even if this were so, it affords no reason for an assumption by the court of an authority which the Constitution denies to it. The courts are not and were not intended to be vested with absolute or universal authority and power, at the expense of the authority and power constitutionally vested in the other departments. Again, it does not follow that, because the governor may not play fast and loose with the pardoning power, granting a pardon today and revoking it tomorrow, he is therefore without remedy, if his clemency is imposed upon by fraud or deceit. If he discovers such fraud or deceit, and is disposed to waive the affront and permit the pardon to stand, no other person or authority may rightfully object; but after he has discovered it, there is no constitutional provision or reason which prohibits him from applying to the court, and, on due notice to the holder of the pardon, asking a decree of cancellation of the grant; but, in the absence of any such complaint on his part, neither the court nor any public officer or citizen is entitled to assume or exercise powers of guardianship over the executive, or to interfere in any manner, upon any pretense, in the exercise of the executive discretion.

The order appealed from should be affirmed.

ARTHUR, J., concurs in the foregoing dissent.